IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WADE FELIX THORNTON,

    Petitioner,                    No. CIV S-03-0755 MCE DAD P

    vs.

DIANA K. BUTLER, Warden,

    Respondent.             FINDINGS & RECOMMENDATIONS

        Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before the court is petitioner's October 22, 2007, motion for stay and abeyance.

**BACKGROUND**

        In his habeas petition pending before this court, petitioner challenges a judgment of conviction entered in the Sacramento County Superior Court on August 4, 2000. (Pet. at 2.) Petitioner was convicted of second degree robbery and possession of cocaine base. (Id.) In addition, the trial court found true the allegations that petitioner had a prior serious felony conviction and had served two prior prison terms. (Id.)

        Because the facts of petitioner's crime provide background for the new claim he wishes to exhaust in state court, they will be set forth below:

1

Defendants Kevin B. Johnson and Wade Felix Thornton were convicted of second degree robbery ( Pen. Code, §§ 211, 212.5), and the jury also found Thornton guilty of possessing cocaine base (Health & Saf. Code, § 11350, subd. (a). The trial court found true the allegations that Johnson had two prior serious felony convictions within the meaning of the "three strikes law" and that Thornton had one such prior conviction. (Pen. Code, §§ 667, subds. (a) and (b) - (I), 1170.12.) Johnson was sentenced to state prison for 25 years to life, and Thornton received a prison term of 17 years and 4 months.

* * *

Late one evening, Easmon Durant cashed a social security check for about $700 at a convenience store on Del Paso Boulevard in Sacramento. On the way home after purchasing some food and groceries, he encountered two men, one Caucasian and the other African-American.

Acting and talking in a way that led Durant to believe the two men were undercover police officers, the Caucasian accused Durant of being a drug user. Grabbing Durant and pushing him up against a wall, the man took everything out of Durant's pockets. After removing the cash from Durant's wallet, the man said that he had to verify if Durant got the money legitimately or from drug dealing. Durant replied he had just cashed his social security check. Telling Durant there were undercover cars around the corner in the alley, the man said he had to go there to make a call and verify Durant's claim. He then escorted Durant to a parking lot, tapped on a red van, and counted the $680 he had taken from Durant's wallet. At this point, the African-American came up and said he had run a warrant check and there were no outstanding warrants on Durant. The African-American told Durant to sit down and not move while the men went to "check out the money situation." The men then walked away separately. Durant waited a "long time" but the men did not return with his money. He had not resisted the men because, based upon their words and actions, he was afraid they would arrest him. The robbery occurred around 11:00 p.m.

At about 11:18 p.m., Officer Patrick MacBeth was on patrol on Del Paso Boulevard when he saw defendant Johnson, a Caucasian, and defendant Thornton, an African-American, running across the road within about 100 yards of the site of the robbery. MacBeth was unaware that the robbery had occurred because Durant did not report it until shortly before midnight. However, because the men were running in a direction away from a Shall station, MacBeth suspected they might have been involved in a theft at the station. Thus, he shined his spotlight on the men and told them to stop.

Defendant Thornton immediately put his hands into his pockets. Fearing for his safety, MacBeth ordered Thornton to "show

[MacBeth] his hands." When Thornton did so, he dropped two items onto the ground: Durant's wallet; and an orange container holding .04 grams of cocaine base. After testing the substance in the container, MacBeth arrested Thornton for possessing a controlled substance.

Officer Kevin Griffin, who had arrived to assist MacBeth, searched Johnson and found approximately $700 in his right front pants pocket. Johnson claimed he had obtained the money by cashing a social security check. The money was returned to Johnson, and he was released.

The primary issue at trial was whether Johnson and Thornton were the two men who robbed Durant.

In a photographic line-up, Durant identified Johnson as the Caucasian robber. At trial, Durant was "almost" willing to identify Johnson as the Caucasian robber, but was not positive because Johnson's physical appearance at trial was somewhat different from how the Caucasian robber looked at the time of the robbery.[1] Officers MacBeth and Griffin identified Johnson as the Caucasian man they detained on the night of the robbery; but Griffin said he was not certain of the identification because Johnson's appearance had changed. However, Griffin testified that the man had identified himself as Johnson and had provided Griffin with personal information, including a Department of Corrections (CDC) number assigned to Johnson.

Durant testified that Thornton might or might not have been the African-American involved in the robbery. But the description that Durant gave of the perpetrator on the night of the robbery was consistent in some particulars with Thornton's appearance when he was arrested the same night. And Officer MacBeth identified Thornton as the African-American man he arrested approximately 100 yards from the crime scene soon after the robbery.

*Johnson's Defense*

Johnson testified that he was not involved in the robbery and, in fact, was not even the man detained by police that evening. As for the identifying information the Caucasian suspect had given to Officer Griffin, Johnson claimed someone had stolen his wallet, which contained his driver's license and other personal documents, prior to the date of the robbery. Johnson also asserted that he could

---

[1] Johnson had somewhat longer hair and a beard at the time of trial. Although Johnson had a slight mustache at the time of the crime, Durant had told police he thought the Caucasian robber was clean-shaven. Additionally, Durant did not notice that Johnson had what was apparently a noticeable rash on his face. Johnson also was somewhat taller than the description Durant initially gave police.

not have been the suspect whom Officer MacBeth saw running without any noticeable impairment, because Johnson could not run on the date of the robbery due to a medical condition – he walked with a limp and often used a cane. To bolster this claim, Johnson introduced evidence from medical professionals who had previously treated him.

The People introduced evidence to rebut Johnson's claim about his medical condition. The officer who arrested Johnson two days after the robbery testified that he saw Johnson exit a motorhome, walk down four steps, and then walk about 50 feet. Johnson did not limp, was not using a cane, and had no trouble walking. While the officer was present at the medical intake screening at county jail, Johnson noted his medical condition but indicated that he did not have any physical disabilities and did not use a walking aid.

A further blow to Johnson's defense occurred when codefendant Thornton testified in his own defense and identified Johnson as the man who was with Thornton when they were stopped by Officer MacBeth. When asked if he had an explanation why Thornton so testified, Johnson replied: "I do not."

*Thornton's Defense*

Thornton denied any involvement in the robbery. Thornton testified as follows: He met Johnson for the first time that night, when Johnson and a "tall, skinny" African-American man came up to Thornton as he was sitting at a bus shelter in front of the Shell station on Del Paso Boulevard. Johnson offered to pay Thornton to get some drugs, and they left the bus shelter together to do so. They ran across the boulevard because it was a "pretty busy street." Johnson did not have a cane or a limp, and had no problem running. Thornton disputed Officer MacBeth's testimony that Thornton pulled Durant's wallet from his pocket and dropped it on the ground. According to Thornton, when the officer pulled up, Johnson tried to hand Thornton the wallet and, in Thornton's words: "I was like, [w]hat is this? What are you doing?" The wallet then dropped to the ground. Thornton admitted possessing the orange container with cocaine base.

(Pet., Ex. A at 2-6 (November 28, 2001, opinion by the California Court of Appeal for the Third Appellate District)).

Petitioner and co-defendant Johnson (hereinafter Johnson) appealed their judgments of conviction in the California Court of Appeal. (Answer, Exs. A, B.) On March 7, 2001, the appellate court issued an opinion affirming both convictions in their entirety. (Pet., Ex. A.) Petitioner subsequently filed a petition for review, which was summarily denied by order

4

dated February 14, 2002. (Answer, Ex. C.) On March 29, 2002, petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (Answer, Ex. D.) That petition was summarily denied by order dated November 13, 2002. (Pet., Ex. E.)

On April 11, 2003, petitioner filed a petition for writ of habeas corpus in this court. Therein, petitioner alleges that: (1) he was denied access to the courts when his appellate attorney abandoned him after his appeal was decided; (2) the evidence at his trial was insufficient to support his conviction for robbery; (3) his right to due process was violated when the trial court denied his motion for new trial without holding an evidentiary hearing; (4) his right to due process and a jury trial were violated because the jury was not allowed to hear testimony from petitioner's co-defendant that petitioner was not involved in the robbery; and (5) his right to due process was violated by the giving of CALJIC No. 17.41.1.[2]

During its review of this matter, the court became aware that Bobby Green, an inmate in Arkansas, had sent a declaration signed under penalty of perjury to Johnson in which Green stated that he, and not Johnson, had committed the robbery of Easmon Durant. (See Pet'r's October 22, 2007 Mot. for Stay and Abeyance (Motion for Stay), Ex. A.) As a result of questions raised by Green's declaration, this court appointed counsel for both petitioner and co-defendant Johnson in connection with their respective habeas petitions.

Status conferences were held in this matter on May 25, 2007, and September 21, 2007. On October 22, 2007, petitioner filed a motion requesting that this action be stayed so that

/////

/////

/////

/////

---

[2] Co-defendant Johnson filed a petition for writ of habeas corpus in this court on May 5, 2004. Johnson raises a claim of actual innocence and a claim that the federal habeas statute may not be applied to deny relief for prejudicial violations of constitutional rights. That petition stands submitted to the court for decision.

he could exhaust a claim of actual innocence in state court.  On November 13, 2007, respondent filed an opposition to petitioner's motion for stay.[3]

## PETITIONER'S MOTION FOR STAY AND ABEYANCE

A. Petitioner's Arguments

Petitioner states that he did not participate in the robbery of Easmon Durant.  He supports this claim with "new evidence" in the form of the above-described declaration under penalty of perjury from inmate Bobby Green that was sent to petitioner's co-defendant Kevin Johnson.  (See Motion for Stay, Ex. A.)  In that declaration, Green states that he committed the robbery of Durant with an African-American man named Larry.  (Id.)  According to Green, after he committed the robbery he encountered petitioner, who was a stranger to him, and asked petitioner if he knew where to buy drugs.  (Id.)  As Green and petitioner were running across the street, they were apprehended, as described above.  (Id.)  Green explains that he committed the robbery of Durant, and also other crimes, after he escaped from an Arkansas prison in the latter part of 1999.  (Id.)  He used the name and identifying information, including prison number, of Johnson, whose wallet he had stolen in an earlier crime.  (Id.)  Green declares that he had never spoken to or met Johnson before contacting him.  (Id.)  He states that he decided to contact Johnson's family because he "began to be concerned over the possibility that perhaps this Kevin Johnson just may have been arrested and charged for something I had done."  (Id.)[4]

---

[3] On March 9, 2007, while petitioner was proceeding in this matter pro se, he filed a motion for a stay pending exhaustion in state court of a claim based on Cunningham v. California, 549 U.S. ___, 127 S. Ct. 856 (2007).  Petitioner's pro se motion for stay has been superceded by the later motion for stay filed by his counsel on his behalf and will therefore be denied as moot.

[4] On May 13, 2003, Johnson filed a habeas petition in state court, claiming that he was innocent of the Durant robbery.  (Resp't's November 13, 2007, Opp'n to Pet'r's Mot. for Stay (hereinafter Opposition) at 12.)  In support of this claim, Johnson filed a letter sent by Green to Johnson at his parents' address, in which Green stated in cursory fashion that he had committed the Durant robbery and that he would provide more detailed information and sign an affidavit, if asked.  (See court document No. 4 (entitled "Exhibit 22") in Case No. CIV S-04-0892 WBS DAD P (Johnson habeas)).  The state court denied relief on petitioner's claim of innocence and

1   Counsel for petitioner states that, after conducting an interview of inmate Green in
2   an Arkansas prison, he "deems the recently discovered evidence to be critical, and sufficiently
3   reliable and desires to present the evidence in state court, and thereafter to supplement the
4   petition herein by presenting the evidence in this court after exhausting claims based upon the
5   new evidence in state court." (Motion for Stay at 5.) Counsel argues that Green's declaration
6   indicates petitioner and Johnson were misidentified as the victim's assailants. (Id. at 6.)

   B.   Respondents' Arguments

8   Respondent argues that petitioner's claim of factual innocence is "plainly
9   meritless" and that, in any event, a freestanding claim of actual innocence is unavailable in a non-
10  capital federal habeas corpus petition. (Opposition at 6.) Respondent reviews the evidence at
11  petitioner's trial, compares it to the statements in Green's declaration, and concludes that
12  petitioner's "newly discovered evidence" is insufficient to meet petitioner's burden of
13  demonstrating that he is probably innocent of the robbery of Durant. (Id. at 8-15.)

   C.   Applicable Law

15  The United States Supreme Court has affirmed the district court's discretion to
16  stay a federal habeas proceeding to allow a petitioner to present unexhausted claims to the state
17  court where there is good cause for the petitioner's failure to exhaust all claims in state court
18  before filing a federal habeas petition. See Rhines v. Weber, 544 U.S. 269, 277 (2005); see also
19  Anthony v. Cambra, 236 F.3d 568, 575 (9th Cir. 2000) (authorizing district courts to stay fully
20  exhausted federal petitions pending exhaustion of other claims); Calderon v. United States Dist.

---

rejected Green's letter, largely on the basis that it was not in the form of an affidavit signed under penalty of perjury. (Opposition at 12.) After the California Supreme Court denied Johnson's petition for a writ of habeas corpus, Johnson wrote to Green asking for a declaration detailing the facts of the robbery. (April 19, 2006, Mem. of P. & A. in Supp. of Am. Pet. for Writ of Habeas Corpus in Johnson habeas, at 12.) In response, Johnson received Green's affidavit in May 2004, which is signed under penalty of perjury and contains additional information regarding the particulars of the Durant robbery. (Id.) It is the affidavit signed under penalty of perjury that forms the basis of petitioner's claim of newly discovered evidence of actual innocence in the instant case.

1 Court (Taylor), 134 F.3d 981, 987-88 (9th Cir. 1998).  This discretion to issue a stay extends to
2 mixed petitions.  Rhines, 544 U.S. at 278 (where a petitioner has met the standard for the
3 granting of stay and abeyance, "the district court should stay, rather than dismiss, the mixed
4 petition."); Jackson v. Roe, 425 F.3d 654, 660 (9th Cir. 2005) ("Rhines concluded that a district
5 court has discretion to stay a mixed petition to allow a petitioner time to return to state court to
6 present unexhausted claims.").  The Court cautioned, however, that "stay and abeyance should be
7 available only in limited circumstances," and "district courts should place reasonable time limits
8 on a petitioner's trip to state court and back."  Rhines. 544 U.S. at 277-78.  The Court noted that
9 district courts should not grant a stay if the petitioner has engaged in abusive litigation tactics or
10 intentional delay or if the unexhausted claims are plainly meritless.  Id. at 278.

11             In Herrera v. Collins, 506 U.S. 390 (1993), a majority of the Supreme Court
12 assumed, without deciding, that the execution of an innocent person would violate the
13 Constitution.  A different majority of the Supreme Court explicitly so held.  Compare 506 U.S. at
14 417 with 506 U.S. at 419 and 430-37.  See also Jackson v. Calderon, 211 F.3d 1148, 1165 (9th
15 Cir. 2000) (noting that a majority of the Justices in Herrera would have supported a claim of
16 free-standing actual innocence); Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc).
17 Although the Supreme Court did not specify the standard applicable to this type of "innocence"
18 claim, it noted that the threshold would be "extraordinarily high" and that the showing would
19 have to be "truly persuasive."  Herrera, 506 U.S. at 417.  See also Carriger, 132 F.3d at 476.  The
20 Ninth Circuit has determined that in order to be entitled to relief on such a claim a petitioner
21 must affirmatively prove that he is probably innocent.  Jackson, 211 F.3d at 1165; Carriger, 132
22 F.3d at 476-77.  Recently, the Supreme Court declined to resolve whether federal courts may
23 entertain independent claims of actual innocence but concluded that the petitioner's showing of
24 innocence in the case before it fell short of the threshold suggested by the Court in Herrera.
25 House v. Bell, ___ U.S. ___, 126 S. Ct. 2064, 2084 (2006).  See also Cooper v. Brown, ___ F.3d
26 /////

___, 2007 WL 4233685, *11 (9th Cir. Dec. 4, 2007) (addressing a claim of actual innocence accompanied by a Brady claim in the context of a capital case).

D.  Analysis

After a review of the entire record before this court concerning the robbery of Easmon Durant, the undersigned concludes that petitioner is entitled to a stay in order to exhaust his claim of innocence in state court. At their state court trial, both petitioner and Johnson argued that they had been misidentified as the perpetrators of the robbery. After both men had been convicted of the robbery, another inmate took responsibility for the crime, explaining a factual scenario that is consistent with the trial testimony of both petitioner and Johnson. After initial investigation, counsel for petitioner has apparently discovered no previous relationship between Green, on the one hand, and Johnson and petitioner on the other. Green's declaration describes himself as the perpetrator of the Durant robbery and no party has advanced any reason why Green would wish to falsely incriminate himself in this manner. The state court record, at least at this point, contains no evidence of a motive for Green to lie. If the statements contained in Green's declaration are false, Green, Johnson, petitioner, or perhaps all three, may be attempting to perpetrate a fraud on this court. Further investigation in connection with a habeas petition in state court may resolve these matters.

Respondent recounts in some detail the evidence introduced at petitioner's trial which implicated petitioner and Johnson in the robbery of Durant. However, this court also notes the following. Durant was unable to identify petitioner as the perpetrator of the robbery. In addition, Durant's description of the Caucasion person involved in the robbery, which was given to police shortly after the crime occurred, matched inmate Green almost exactly but did not particularly match Johnson. (See Motion for Stay, Ex. C; Ex. D; Ex. G at 8-9; Ex. E, photograph No. 2.) At trial, Durant agreed that Johnson did not match the description of the perpetrator he had given to police at the time of the crime. (Motion for Stay, Ex. D.) When one of the police officers present at the scene was asked at trial whether Johnson was the person he arrested, he

9

1  stated that he wasn't sure, explaining, "he doesn't look exactly the same as he did then, but I
2  think I do see him." (Reporter's Transcript on Appeal (RT) at 114, 116.) Petitioner's and
3  Johnson's version of the events, as described in their trial testimony, is not inconsistent with
4  Green's description of the crime. On the contrary, several unanswered questions which arose at
5  petitioner's trial regarding the identity of the perpetrators could be explained by Green's
6  description of what occurred. In these particulars, the record includes at least some independent
7  support for the statements made by Green in his declaration.

8  Respondent notes that, after his conviction, Johnson signed an affidavit stating
9  that he committed the robbery of Durant but that petitioner was not involved in the crime. (See
10 Clerk's Transcript on Appeal (CT) at 330.) In that declaration, Johnson stated that he was
11 willing to testify on petitioner's behalf in any retrial of the case against him and that he was
12 making the declaration against the advice of his attorney. (Id.) In his habeas petition in this
13 court, Johnson explains that petitioner threatened him in jail for involving petitioner in a crime
14 he did not commit, and that Johnson wrote the declaration falsely implicating himself in the
15 robbery in order to eliminate the threat from petitioner and out of fear for his own safety. (April
16 19, 2006, Mem. of P. & A. in Supp. of Am. Pet. for Writ of Habeas Corpus in Johnson habeas, at
17 12 n.13; October 29, 2004, pro se Traverse filed in Johnson habeas, Ex. C at 7-9.)

18 Respondent also notes that the Caucasian man arrested at the scene used
19 Johnson's actual prisoner identification number to identify himself to the police. (Opposition at
20 14.) However, Johnson states in his federal habeas petition that his stolen wallet contained his
21 parole card. (May 5, 2004, pro se Pet. filed in Johnson habeas at 9.) Green declares that he
22 memorized all of the information in Johnson's wallet after he stole it on order to be able to later
23 identify himself as Johnson. (Motion for Stay, Ex. A at consecutive p. 2.)

24 Petitioner cannot present his new claim of actual innocence to this court until that
25 claim has been fairly presented to the California Supreme Court. There is no evidence before the
26 court that petitioner is seeking to stay these proceedings for any improper purpose. Nor does it

appear that petitioner has engaged in abusive litigation tactics or intentional delay after discovering the new evidence in question. On the contrary, it appears that petitioner was unaware of the declaration signed by inmate Green until this court brought it to his attention. Moreover, if petitioner obtains relief in state court, his federal petition may be rendered moot, thereby serving the interests of judicial economy as well as the interests of justice. Finally, although respondent may ultimately prove to be correct regarding the merits of the claim which petitioner intends to exhaust in state court, the undersigned at this time does not find it to be "plainly meritless." Rhines, 544 U.S. at 277.

This court is not able to determine at this time that the federal claim petitioner will present to this court after exhausting his state court remedies cannot prevail. Petitioner has presented evidence suggesting that, notwithstanding evidence at his trial supporting his conviction for robbery, he might be innocent of the crime for which he is incarcerated. Justice requires that he be allowed to substantiate his claim of actual innocence in the state courts where he was convicted. See Picard v. Connor, 404 U.S. 270, 275 (1971) (the exhaustion doctrine is based on a policy of federal and state comity and is designed to give state courts the initial opportunity to correct alleged constitutional deprivations). The undersigned will therefore recommend that this action be stayed while petitioner exhausts his unexhausted claim of actual innocence.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's March 9, 2007, motion for stay and abeyance be denied;

2. Petitioner's October 22, 2007, motion for stay and abeyance be granted;

3. Petitioner be ordered to present his unexhausted claim to the California Supreme Court in a further state habeas corpus petition to be filed within thirty days from the date of this order;

4. This action be stayed and the Clerk of the Court be directed to administratively close this case;

11

1    5. Petitioner be ordered to file and serve a status report in this case on the first
2 court day of each month; and
3    6. Petitioner be ordered to file and serve a motion to lift the stay of this action,
4 along with a proposed amended petition containing only exhausted claims, within thirty days
5 after petitioner is served with the California Supreme Court's order disposing of the state
6 exhaustion petition.
7    These findings and recommendations will be submitted to the United States
8 District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within
9 twenty days after being served with these findings and recommendations, any party may file
10 written objections with the court.  The document should be captioned "Objections to Findings
11 and Recommendations."  The parties are advised that failure to file objections within the
12 specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951
13 F.2d 1153 (9th Cir. 1991).
14 DATED: December 17, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
thornton755.stay