IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN B. JOHNSON, | |
| Petitioner, | No. CIV S-04-0892 MCE DAD P |
| vs. | |
| JIM HAMLET, Warden, et al., | |
| Respondents. | |

| | |
|---|---|
| WADE THORNTON, | |
| Petitioner, | No. CIV S-03-0755 MCE DAD P |
| vs. | |
| DIANA BUTLER, Warden, | |
| Respondent. | <u>ORDER SETTING EVIDENTIARY HEARING</u> |

Petitioners Kevin B. Johnson and Wade Thornton are state prisoners proceeding through separate counsel with related applications for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioners challenge a judgment of conviction entered against them in the Sacramento County Superior Court on August 4, 2000, after a joint trial, on a charge of second

/////

1

degree robbery.[1] Both petitioners claim that they are factually innocent of the robbery and that their imprisonment therefore violates their rights under the Eighth and Fourteenth Amendments. Petitioners request an evidentiary hearing on their claim of actual innocence. After careful consideration of the record and the applicable law, this court will grant the petitioners' request for an evidentiary hearing.

## BACKGROUND

1. State Court Opinion

The California Court of Appeal described the relevant underlying facts and the procedural history of this case in its decision on the appeal filed by petitioners Thornton and Johnson. This court presumes that the state court's findings of fact are correct unless petitioners rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). Petitioners have not attempted to overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

> Defendants Kevin B. Johnson and Wade Felix Thornton were convicted of second degree robbery ( Pen. Code, §§ 211, 212.5), and the jury also found Thornton guilty of possessing cocaine base (Health & Saf. Code, § 11350, subd. (a). The trial court found true the allegations that Johnson had two prior serious felony convictions within the meaning of the "three strikes law" and that Thornton had one such prior conviction. (Pen. Code, §§ 667, subds. (a) and (b) - (I), 1170.12.) Johnson was sentenced to state prison for 25 years to life, and Thornton received a prison term of 17 years and 4 months.
>
> * * *
>
> Late one evening, Easmon Durant cashed a social security check for about $700 at a convenience store on Del Paso Boulevard in Sacramento. On the way home after purchasing some food and groceries, he encountered two men, one Caucasian and the other African-American.

---

[1] Petitioner Thornton was also convicted of possession of cocaine base. (Clerk's Transcript on Appeal (CT) in Case No. CIV S-03-0755 MCE DAD P (Thornton Habeas), at 287). Thornton does not challenge that conviction.

Acting and talking in a way that led Durant to believe the two men were undercover police officers, the Caucasian accused Durant of being a drug user. Grabbing Durant and pushing him up against a wall, the man took everything out of Durant's pockets. After removing the cash from Durant's wallet, the man said that he had to verify if Durant got the money legitimately or from drug dealing. Durant replied he had just cashed his social security check. Telling Durant there were undercover cars around the corner in the alley, the man said he had to go there to make a call and verify Durant's claim. He then escorted Durant to a parking lot, tapped on a red van, and counted the $680 he had taken from Durant's wallet. At this point, the African-American came up and said he had run a warrant check and there were no outstanding warrants on Durant. The African-American told Durant to sit down and not move while the men went to "check out the money situation." The men then walked away separately. Durant waited a "long time" but the men did not return with his money. He had not resisted the men because, based upon their words and actions, he was afraid they would arrest him. The robbery occurred around 11:00 p.m.

At about 11:18 p.m., Officer Patrick MacBeth was on patrol on Del Paso Boulevard when he saw defendant Johnson, a Caucasian, and defendant Thornton, an African-American, running across the road within about 100 yards of the site of the robbery. MacBeth was unaware that the robbery had occurred because Durant did not report it until shortly before midnight. However, because the men were running in a direction away from a Shall station, MacBeth suspected they might have been involved in a theft at the station. Thus, he shined his spotlight on the men and told them to stop.

Defendant Thornton immediately put his hands into his pockets. Fearing for his safety, MacBeth ordered Thornton to "show [MacBeth] his hands." When Thornton did so, he dropped two items onto the ground: Durant's wallet; and an orange container holding .04 grams of cocaine base. After testing the substance in the container, MacBeth arrested Thornton for possessing a controlled substance.

Officer Kevin Griffin, who had arrived to assist MacBeth, searched Johnson and found approximately $700 in his right front pants pocket. Johnson claimed he had obtained the money by cashing a social security check. The money was returned to Johnson, and he was released.

The primary issue at trial was whether Johnson and Thornton were the two men who robbed Durant.

In a photographic line-up, Durant identified Johnson as the Caucasian robber. At trial, Durant was "almost" willing to identify Johnson as the Caucasian robber, but was not positive because Johnson's physical appearance at trial was somewhat different

3

from how the Caucasian robber looked at the time of the robbery.[2] Officers MacBeth and Griffin identified Johnson as the Caucasian man they detained on the night of the robbery; but Griffin said he was not certain of the identification because Johnson's appearance had changed. However, Griffin testified that the man had identified himself as Johnson and had provided Griffin with personal information, including a Department of Corrections (CDC) number assigned to Johnson.

Durant testified that Thornton might or might not have been the African-American involved in the robbery. But the description that Durant gave of the perpetrator on the night of the robbery was consistent in some particulars with Thornton's appearance when he was arrested the same night. And Officer MacBeth identified Thornton as the African-American man he arrested approximately 100 yards from the crime scene soon after the robbery.

*Johnson's Defense*

Johnson testified that he was not involved in the robbery and, in fact, was not even the man detained by police that evening. As for the identifying information the Caucasian suspect had given to Officer Griffin, Johnson claimed someone had stolen his wallet, which contained his driver's license and other personal documents, prior to the date of the robbery. Johnson also asserted that he could not have been the suspect whom Officer MacBeth saw running without any noticeable impairment, because Johnson could not run on the date of the robbery due to a medical condition – he walked with a limp and often used a cane. To bolster this claim, Johnson introduced evidence from medical professionals who had previously treated him.

The People introduced evidence to rebut Johnson's claim about his medical condition. The officer who arrested Johnson two days after the robbery testified that he saw Johnson exit a motorhome, walk down four steps, and then walk about 50 feet. Johnson did not limp, was not using a cane, and had no trouble walking. While the officer was present at the medical intake screening at county jail, Johnson noted his medical condition but indicated that he did not have any physical disabilities and did not use a walking aid.

A further blow to Johnson's defense occurred when codefendant Thornton testified in his own defense and identified Johnson as the man who was with Thornton when they were stopped by Officer

---

[2] Johnson had somewhat longer hair and a beard at the time of trial. Although Johnson had a slight mustache at the time of the crime, Durant had told police he thought the Caucasian robber was clean-shaven. Additionally, Durant did not notice that Johnson had what was apparently a noticeable rash on his face. Johnson also was somewhat taller than the description Durant initially gave police.

4

>MacBeth. When asked if he had an explanation why Thornton so testified, Johnson replied: "I do not."
>
>*Thornton's Defense*
>
>Thornton denied any involvement in the robbery. Thornton testified as follows: He met Johnson for the first time that night, when Johnson and a "tall, skinny" African-American man came up to Thornton as he was sitting at a bus shelter in front of the Shell station on Del Paso Boulevard. Johnson offered to pay Thornton to get some drugs, and they left the bus shelter together to do so. They ran across the boulevard because it was a "pretty busy street." Johnson did not have a cane or a limp, and had no problem running. Thornton disputed Officer MacBeth's testimony that Thornton pulled Durant's wallet from his pocket and dropped it on the ground. According to Thornton, when the officer pulled up, Johnson tried to hand Thornton the wallet and, in Thornton's words: "I was like, [w]hat is this? What are you doing?" The wallet then dropped to the ground. Thornton admitted possessing the orange container with cocaine base.

(November 28, 2001, opinion by the California Court of Appeal for the Third Appellate District, filed as Ex. A to the Amended Petition in Thornton Habeas, at 2-6).

2. Court Proceedings Filed by Petitioner Johnson

After the California Court of Appeal rejected his claims raised on appeal, petitioner Johnson filed a petition for review in the California Supreme Court. (August 5, 2004 Answer filed in Case No. CIV S-04-0892 MCE DAD P (Johnson Habeas), Ex. D.) That petition was summarily denied by order dated February 13, 2002. (Id., Ex. E.)

On May 13, 2003, petitioner Johnson filed a habeas petition in the Sacramento County Superior Court, claiming that he was innocent of the Durant robbery. (May 24, 2006 Amended Answer filed in Johnson Habeas, at 2.)[3] In support of his claim of innocence, Johnson filed a letter sent to his parents by Bobby Green, an inmate in an Arkansas prison previously unknown to Johnson. (See court document No. 4 (entitled "Exhibit 22") filed in Johnson habeas). In the letter, Green stated in cursory fashion that he had committed the Durant robbery

---

[3] A copy of that petition has not been provided to this court.

5

and that he would provide more detailed information and sign an affidavit, if asked. (Id.) The state court denied relief on petitioner's claim of innocence and rejected Green's letter, in part on the basis that it was not in the form of an affidavit signed under penalty of perjury. (August 5, 2004 Answer filed in Johnson Habeas, Ex. F.) Petitioner Johnson then filed a petition for writ of habeas corpus in the California Court of Appeal. (May 24, 2006 Amended Answer filed in Johnson Habeas, at 3.)[4] That petition was summarily denied by order dated July 3, 2003. (August 5, 2004 Answer filed in Johnson Habeas, Ex. G.)

On July 28, 2003, petitioner Johnson filed a petition for a writ of habeas corpus in the California Supreme Court claiming, among other things, that he was factually innocent of the robbery of Durant. (Id., Ex. H.) That petition was summarily denied by order dated April 21, 2004. (Id., Ex. I.) After the California Supreme Court denied Johnson's habeas petition, he wrote to Green asking for a declaration detailing the facts of the robbery. (April 19, 2006, Mem. of P. & A. in Supp. of Am. Pet. for Writ of Habeas Corpus filed in Johnson Habeas, at 12.) In response, in May 2004, Johnson received an affidavit signed by Green under penalty of perjury, which contained additional information regarding the particulars of the Durant robbery. (Id.) See August 9, 2008 Am. Pet. filed in Thornton Habeas, Ex. D (Green declaration). It is this affidavit, signed under penalty of perjury, that forms the basis of petitioner's claim of newly discovered evidence of actual innocence in the instant case.

On May 5, 2004, petitioner Johnson filed an original petition for a writ of habeas corpus in this court. During its review of Johnson's habeas petition, this court became aware of the declaration sent to petitioner Johnson by inmate Green. As a result of questions raised by Green's declaration, this court appointed counsel for both petitioners Johnson and Thornton in connection with their respective habeas petitions.

/////

---

[4] A copy of that petition has not been filed with this court.

6

Petitioner Johnson, through his appointed habeas counsel, filed an amended petition for a writ of habeas corpus in this court on April 19, 2006. Respondent filed an amended answer on May 24, 2006. Petitioner filed an amended traverse on June 23, 2006.

### 3. Court Proceedings Filed by Petitioner Thornton

After the California Court of Appeal rejected his claims raised on appeal, petitioner Thornton filed a petition for review, which was summarily denied by order dated February 13, 2002. (August 9, 2008 Am. Pet. filed in Thornton Habeas, Ex. C.) On March 29, 2002, petitioner Thornton filed a petition for writ of habeas corpus in the California Supreme Court. (Id., Ex. B.) That petition was summarily denied by order dated November 13, 2002. (April 11, 2003 Petition filed in Thornton Habeas, Ex. E.)

On April 11, 2003, Thornton filed a petition for writ of habeas corpus in this court. Therein, Thornton alleged that: (1) he was denied access to the courts when his appellate attorney abandoned him after his appeal was decided; (2) the evidence introduced at his trial was insufficient to support his conviction for robbery; (3) his right to due process was violated when the trial court denied his motion for new trial without holding an evidentiary hearing; (4) his right to due process and a jury trial were violated because the jury was not allowed to hear testimony from his co-defendant Johnson that petitioner was not involved in the robbery; and (5) his right to due process was violated by the giving of CALJIC No. 17.41.1. After habeas counsel was appointed, petitioner Thornton filed a motion requesting that this action be stayed so that he could exhaust a claim of actual innocence in state court. That motion was granted by order dated February 6, 2008.

Subsequently, Thornton filed a petition for writ of habeas corpus in the California Supreme Court. (August 9, 2008 Am. Pet. filed in Thornton Habeas, Ex. J.) Therein, he claimed that newly discovered evidence proved he was factually innocent of the robbery and that his imprisonment violated his Fourteenth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment. (Id.) That petition was

7

1  summarily denied by order dated June 25, 2008. (Id., Ex. K.) On August 9, 2008, Thornton filed
2  a request to lift the stay of these proceedings, and also filed the amended petition upon which this
3  action is proceeding. By order dated August 13, 2008, Thornton's request to lift the stay was
4  granted. Respondent filed an answer to the amended petition on September 12, 2008.

THE PARTIES' CONTENTIONS

A.  Petitioners' Claim of Innocence

Petitioners claim that they did not participate in the robbery of Easmon Durant but were misidentified as his assailants. They support their claim of actual innocence with the above-described declaration from inmate Bobby Green, signed under penalty of perjury, that was sent to petitioner Johnson.

In his declaration, Green states that he committed the robbery of Durant with an African-American man named Larry. (August 9, 2008 Am. Pet. filed in Thornton Habeas, Ex. D.) According to Green, after he committed the robbery he encountered petitioner Thornton, who was a stranger to him, and asked Thornton if he knew where to buy drugs. (Id.) As Green and Thornton were running across the street, they were apprehended, as described by the California Court of Appeal in its opinion. (Id.) Green explains that he committed the robbery of Durant, and also other crimes, after he escaped from an Arkansas prison in the latter part of 1999. (Id.) He used the name and identifying information, including prison number, of Johnson, whose wallet he had stolen in an earlier crime. (Id.) Green declares that he had never spoken to or met Johnson before contacting his family and providing the declaration. (Id.) He states that he decided to contact Johnson's family because he "began to be concerned over the possibility that perhaps this Kevin Johnson just may have been arrested and charged for something I had done." (Id.) In connection with his representation of petitioner Thornton in his federal habeas action, Thornton's counsel conducted an interview of inmate Green in an Arkansas prison. In his motion for a stay of the instant proceedings, counsel states that he believes Green's story to be

/////

"critical, and sufficiently reliable." (October 22, 2007 Motion for Stay filed in Thornton Habeas, at 5.)

B. Respondents' Arguments

Respondents argue that petitioners' claims of factual innocence are meritless and that, in any event, a freestanding claim of actual innocence is unavailable in a non-capital federal habeas corpus petition. (Amended Answer filed in Johnson Habeas, at 13-18; Amended Answer filed in Thornton Habeas, at 11-20.) Respondents also review the evidence at petitioners' joint trial, compare it to the statements in Green's declaration, and conclude that petitioners' "newly discovered evidence" is insufficient to meet their burden of demonstrating that they are probably innocent of the robbery of Durant. (Id.)

LEGAL STANDARDS

A. Freestanding Claim of Actual Innocence

In Herrera v. Collins, 506 U.S. 390 (1993), a majority of the Supreme Court assumed, without deciding, that a freestanding claim of actual innocence is cognizable under federal law. In this regard, the court observed that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." Id. at 417. A different majority of the Supreme Court explicitly held that a freestanding claim of actual innocence is cognizable in a federal habeas proceeding. Compare 506 U.S. at 417 with 506 U.S. at 419 and 430-37. See also Jackson v. Calderon, 211 F.3d 1148, 1165 (9th Cir. 2000) (noting that a majority of the Justices in Herrera would have supported a free-standing claim of actual innocence). Although the Supreme Court did not specify the standard applicable to this type of "innocence" claim, it noted that the threshold would be "extraordinarily high" and that the showing would have to be "truly persuasive." Herrera, 506 U.S. at 417. More recently, the United States Supreme Court declined to resolve whether federal courts may entertain independent claims of actual innocence but concluded that the petitioner's

9

showing of innocence in the case before it fell short of the threshold suggested by the Court in Herrera. House v. Bell, 547 U.S. 518, 554-55 (2006).

The Ninth Circuit has assumed that freestanding innocence claims are cognizable in both capital and non-capital cases and has also articulated a minimum standard of proof in order to prevail on such a claim. Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc); Osborne v. District Attorney's Office for Third Judicial Dist., 521 F.3d 1118, 1131 (9th Cir. 2008), cert. granted, 129 S. Ct. 488 (2008). "A habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." Carriger, 132 F.3d at 476-77. See also Jackson, 211 F.3d at 1165. The petitioner's burden in such a case is "extraordinarily high" and requires a showing that is "truly persuasive." Carriger, 132 F.3d at 476 (quoting Herrera, 506 U.S. at 417). Requiring affirmative proof of innocence is deemed to be appropriate because when a petitioner makes a freestanding claim of innocence, he is claiming that he is entitled to relief despite a constitutionally valid conviction. See Carriger, 132 F.3d at 476.

Where a habeas petitioner has made a claim of actual innocence, "Herrera, House, Carriger, and Jackson all support the practice of first resolving whether a petitioner has made an adequate evidentiary showing of actual innocence before reaching the constitutional question of whether freestanding innocence claims are cognizable in habeas." Osborne, 521 F.3d at 1131. See also Majoy v. Roe, 296 F.3d 770, 776-77 (9th Cir. 2002) (holding that the evidentiary basis of a petitioner's innocence claim under Schlup v. Delo, 513 U.S. 298 (1995) should be developed in the district court before considering whether that claim was jurisdictionally barred). Therefore, where appropriate, habeas petitioners should be given the opportunity to develop the facts surrounding their freestanding claim of actual innocence on the assumption that such a claim is cognizable in federal court. See Osborne, 521 F.3d at 1131.

/////

/////

B. Evidentiary Hearings

Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense;

28 U.S.C. § 2254(e)(2).

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). In determining whether to grant an evidentiary hearing, the federal court must apply the AEDPA deferential standards to legal and factual questions necessarily reached by the state courts. Schriro v. Landrigan, 550 U.S. 465, ___, 127 S. Ct. 1933, 1940 (2007).

If the facts do not exist or are inadequate and a hearing might be appropriate, the court must determine whether the petitioner has "failed to develop the factual basis of a claim in State court." 28 U.S.C. § 2254(d). See also Insyxiengmay, 403 F.3d at 669-70. A petitioner will only be charged with a "failure to develop" the facts if "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420,

11

437 (2000) ("comity is not served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was unable to develop his claim in state court despite diligent effort."). See also Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005) ("an exception to this general rule exists if a petitioner exercised diligence in his efforts to develop the factual basis of his claims in state court proceedings"). The petitioner must have "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." Williams, 529 U.S. at 435. "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in the state court in the manner prescribed by state law." Id. at 437. If the petitioner has failed to develop the facts in state court, the court must deny a hearing unless the applicant establishes one of the two narrow exceptions set forth in section 2254(e)(2)(A) & (B).

If the applicant has not "failed to develop" the facts in state court, the district court may proceed to consider whether a hearing is appropriate, or required under Townsend v. Sain, 372 U.S. 293 (1963). Baja, 187 F.3d at 1077. In Townsend, the Supreme Court held that a federal court must grant an evidentiary hearing to a habeas applicant where: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing;[5] or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing. 372 U.S. at 313. If the petitioner "can establish any one

---

[5] Consideration of this fifth factor in assessing the appropriateness of an evidentiary hearing was altered by the U.S. Supreme Court in Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992). In Keeney, the Court held that a petitioner who failed to develop facts in state court must show cause and prejudice. The Supreme Court has held that Congress codified the Keeney "failure to develop" standard in the first clause of 28 U.S.C. §2254(e)(2). Williams, 529 U.S. at 434. Therefore, if petitioner meets the "failure to develop" standard in step one of this analysis, he has satisfied the concerns of Keeney and the court may consider the fifth factor in determining whether or not to hold an evidentiary hearing.

12

of [the Townsend factors], then the state court's decision was based on an unreasonable determination of the facts and the federal court can independently review the merits of that decision by conducting an evidentiary hearing." Earp, 431 F.3d at 1167 (9th Cir. 2005) (citing Taylor v. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004)).

The next step in determining whether an evidentiary hearing is appropriate is to consider whether the petitioner has shown a "colorable claim for relief and has never been afforded a state or federal hearing on this claim." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670; Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004); and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted). The Ninth Circuit Court of Appeals has stressed that a petitioner "only needs to allege a colorable claim for relief which is 'a low bar.'" Earp, 431 F.3d at 1170 (emphasis in original). Thus, a hearing is required if: "(1) [the petitioner] has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a full and fair opportunity to develop those facts [.]" Williams v. Woodford, 384 F.3d 567, 586 (9th Cir. 2004).

ANALYSIS

After a review of the entire record before this court concerning the robbery of Easmon Durant, the undersigned concludes that petitioners are entitled to an evidentiary hearing on their claim of actual innocence. At their trial in state court, Thornton and Johnson both argued that they had been misidentified as the perpetrators of the robbery. After both men had been convicted of the robbery, another inmate took responsibility for the crime, explaining a factual scenario that is consistent with the trial testimony of both Thornton and Johnson. After initial investigation, counsel for petitioner Thornton has apparently discovered no previous relationship between Green, on the one hand, and Johnson and Thornton on the other. In his
/////

application for a writ of habeas corpus filed in the California Court of Appeal, petitioner Johnson made the following statements:

> Petitioner does not know this person named Bob Green, nor has petitioner ever, to his knowledge, had an encounter with Green in any fashion. Petitioner has no knowledge or information as to how Green learned of petitioner's identity or that he stands convicted for any crime. Petitioner does not possess any knowledge or information as to why Green is coming forward now other than him stating, "It's just that it is something that needs to be cleared up."

(August 5, 2004 Answer filed in Thornton Habeas, Ex. H at 40.) Green's declaration describes himself as the perpetrator of the Durant robbery and no party has advanced any reason why Green would wish to falsely incriminate himself in this crime. The state court record, at least at this point, contains no evidence of a motive for Green to lie. If the statements contained in Green's declaration are false, Green, Johnson, petitioner, or perhaps all three, may be attempting to perpetrate a fraud on this court. An evidentiary hearing is necessary to resolve these matters.

      In their filings in this court, respondents recount in some detail the evidence introduced at petitioners' trial which implicated Thornton and Johnson in the robbery of Durant and argue that this evidence casts doubt on the petitioners' claim of innocence. However, as set forth in a previous order of this court, the following facts are also in the record. Durant was unable to identify Thornton as the perpetrator of the robbery. (Reporter's Transcript on Appeal (RT) filed in Johnson Habeas, at 159-60.) In addition, Durant's description of the Caucasian person involved in the robbery, which was given to police shortly after the crime occurred, matched inmate Green almost exactly but did not particularly match Johnson. (See Motion for Stay filed in Thornton Habeas, Ex. C; Ex. D; Ex. G at 8-9; Ex. E, photograph No. 2.) At trial, Durant agreed that Johnson did not match the description of the perpetrator he had given to police at the time of the crime. (Id., Ex. D.) When one of the police officers present at the scene was asked at trial whether Johnson was the person he arrested, he stated that he wasn't sure, explaining, "he doesn't look exactly the same as he did then, but I think I do see him." (RT filed

in Thornton Habeas, at 114, 116.)  Thornton and Johnson's version of the events, as described in their trial testimony, is not inconsistent with Green's description of the crime.  On the contrary, several unanswered questions which arose at petitioners' trial regarding the identity of the perpetrators could be explained by Green's description of what occurred.  In these particulars, the record includes at least some independent support for the statements made by Green in his declaration.

Respondent notes that, after his conviction, Johnson signed an affidavit stating that he committed the robbery of Durant but that petitioner was not involved in the crime.  (See CT filed in Thornton Habeas, at 330.)  In that declaration, Johnson stated that he was willing to testify on Thornton's behalf in any retrial of the case against him and that he was making the declaration against the advice of his attorney.  (Id.)  In his habeas petition in this court, Johnson explains that Thornton threatened him in jail for involving Thornton in a crime he did not commit, and that Johnson wrote the declaration falsely implicating himself in the robbery in order to eliminate the threat from Thornton and out of fear for his own safety.  (April 19, 2006, Mem. of P. & A. in Supp. of Am. Pet. for Writ of Habeas Corpus filed in Johnson Habeas, at 12 n.13; October 29, 2004, pro se Traverse filed in Johnson Habeas, Ex. C at 7-9.)

Respondent also notes that the Caucasian man arrested at the scene used Johnson's actual prisoner identification number to identify himself to the police.  (May 24, 2006 Amended Answer filed in Johnson Habeas, at 16.)  However, Johnson states in his federal habeas petition that his stolen wallet contained his parole card.  (May 5, 2004, Petition filed in Johnson Habeas, at 9.)  Green declares that he memorized information in Johnson's wallet after he stole it on order to be able to later identify himself as Johnson.  (August 9, 2008 Amended Petition filed in Thornton Habeas, Ex. D at consecutive p. 2.)  It appears that petitioner Thornton was unaware of the declaration signed by inmate Green until this court brought it to his attention.  Petitioners have presented evidence suggesting that, notwithstanding evidence at their trial supporting their conviction for robbery, they might be innocent of the crime for which they are incarcerated.

1      Petitioners have not failed to develop the factual basis of their claim of actual
2  innocence in state court.  Petitioner Johnson specifically requested an evidentiary hearing in his
3  petition for a writ of habeas corpus filed in the California Supreme Court, and explained his
4  efforts to obtain an affidavit under penalty of perjury from inmate Green.  (August 5, 2004
5  Answer filed in Johnson Habeas, Ex. H at 43, 47, 92.)  Petitioner Thornton's claim of actual
6  innocence is based on a factual predicate (Green's declaration) that could not have been
7  previously discovered through the exercise of due diligence.  After this court appointed counsel
8  for Thornton, he filed an exhaustion petition in state court in which he thoroughly described the
9  facts surrounding his claim of actual innocence and included the affidavit of inmate Green.
10  These efforts satisfy the diligence requirement.

11      An evidentiary hearing is needed to resolve the matters described above and to
12  explore the factual basis in the record supporting petitioners' claim of actual innocence.  An
13  evidentiary hearing is also necessary to determine whether petitioners are able to satisfy the
14  requirements set forth in Herrera in order to substantiate a free-standing claim of actual
15  innocence.  Petitioners have alleged facts which, if substantiated, might entitle them to habeas
16  corpus relief.  The state courts failed to fully investigate petitioners' claims of innocence and no
17  state court has held a full and fair hearing on these serious allegations.  As a result, the state
18  courts' rejection of petitioners' claim of actual innocence is based on an incomplete record,
19  devoid of sworn testimony surrounding Green's acceptance of responsibility for the robbery of
20  Durant, and is therefore unreliable.  Under these circumstances, petitioners Thornton and
21  Johnson are entitled to an evidentiary hearing.  See Jaramillo v. Stewart, 340 F.3d 877, 884 (9th
22  Cir. 2003) (remanding to the district court for evidentiary hearing after finding that new evidence
23  presented by petitioner was sufficient, if credible, to support a finding of actual innocence);
24  Henry v. Marshall, No. 05-16947, 2007 WL 731353, *1 (9th Cir. 2007) (in pre-AEDPA case,
25  remanding to district court for evidentiary hearing on petitioner's claim of actual innocence
26  because "if the newly-discovered evidence proves to be true, he would have made out a valid

freestanding claim of actual innocence by 'affirmatively prov[ing] that he is probably innocent.'").[6]

For the foregoing reasons and good cause appearing, this matter will be set for evidentiary hearing on May 4, 2009, at 9:00 a.m. The court also makes the following order in regard to the evidentiary hearing.

A. <u>Witnesses</u>

On or before twenty days prior to the hearing the parties shall provide witness lists, including addresses and telephone numbers, to opposing counsel.

Each party may call any witnesses designated by the other.

1. No other witness will be permitted to testify unless:

   a. The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated prior to the evidentiary hearing.

   b. The witness was discovered after the exchange of witnesses and the proffering party makes the showing required in "2," below.

2. The parties shall promptly inform the court and opposing parties of the existence of any unlisted witnesses so that the court may consider at the evidentiary hearing whether the witnesses shall be permitted to testify. The witnesses will not be permitted unless:

   a. The witnesses could not reasonably have been discovered prior to the exchange of witness lists;

   b. The court and the opposing party were promptly notified upon discovery of the witnesses;

   c. If time permitted, the party proffered the witnesses for deposition; or

---

[6] Citation of this unpublished disposition by the Ninth Circuit Court of Appeals is appropriate pursuant to Fed. R. App. P. 32.1 and U.S. Ct. of App. 9th Cir. Rule 36-3(b).

        d. If time did not permit, a reasonable summary of the witnesses' testimony was provided to the opposing party.

    B. <u>Exhibits, Schedules and Summaries</u>

Both parties shall exchange copies of their exhibits twenty days prior to the evidentiary hearing. Any objections to exhibits may be raised at the hearing.

Petitioners will use numbers to mark exhibits; respondents will use letters.

1. No other exhibits will be permitted to be introduced unless:

    a. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not have been reasonably anticipated, or

    b. The exhibit was discovered after the exchange of exhibits and the proffering party makes the showing required in Paragraph "2" below.

2. The parties shall promptly inform the court and opposing party of the existence of any unlisted exhibits so that the court may consider their admissibility at the evidentiary hearing. The exhibits will not be received unless the proffering party demonstrates:

    a. The exhibits could not reasonably have been discovered earlier;

    b. The court and the opposing party were promptly informed of their existence; or

    c. The proffering party forwarded a copy of the exhibit(s) (if physically possible) to the opposing party. If the exhibit(s) may not be copied the proffering party must show that he has made the exhibit(s) reasonably available for inspection by the opposing party.

The parties are directed to each bring an "exhibit book" containing copies of their exhibits to the evidentiary hearing. The "exhibit book" is for bench use during trial.

/////

C. Miscellaneous

Counsel shall make the appropriate writ ad testificandum filings if the presence of petitioner or any other incarcerated witness is desired. Petitioner shall file these writs at least thirty days prior to the hearing.[7] The parties shall otherwise make their own arrangements for the attendance of non-incarcerated witnesses.

Accordingly, IT IS HEREBY ORDERED that an evidentiary hearing is scheduled for May 4, 2009, at 9:00 a.m., in Courtroom No. 27. The parties shall prepare for the hearing in accordance with the terms of this order.

DATED: February 9, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:thorntonjohnson.hrg

---

[7] The court notes that a motion filed on behalf of petitioner Thornton seeking an order preventing his transfer to another prison was recently denied. The court will not reconsider that order. However, were petitioner Thornton to be transferred, out of state or elsewhere, this court would simply be required to issue a writ requiring that he be returned to this district sufficiently in advance of the evidentiary hearing to allow for the proper preparation of his case with counsel.

19