1

2

3

4

5

6

7

8                              IN THE UNITED STATES DISTRICT COURT

9                            FOR THE EASTERN DISTRICT OF CALIFORNIA

10    WADE THORNTON,

11             Petitioner,                    No. CIV S-03-0755 MCE DAD P

12        vs.

13    DIANA BUTLER, Warden,                   ORDER AND

14             Respondent.                    FINDINGS AND RECOMMENDATIONS

15    _____/

16             Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17    corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered

18    against him in the Sacramento County Superior Court on a charge of second degree robbery,

19    following a joint trial with co-defendant Kevin B. Johnson.[1]  Petitioner has filed a motion to

20    amend his habeas petition to add two new claims and to reassert five claims he had previously

21    abandoned.  For the reasons explained below, the motion to amend will be granted in part and

22    denied in part.  The undersigned will also recommend that petitioner's application for habeas

23    corpus relief be denied.

24    /////

25    _____

26        [1] Petitioner was also convicted of possession of cocaine base.  (Clerk's Transcript on
Appeal (CT) at 287.)  He does not challenge that conviction in his pending petition.

1

BACKGROUND

1. <u>Factual Background</u>[2]

      Defendants Kevin B. Johnson and Wade Felix Thornton were convicted of second degree robbery ( Pen. Code, §§ 211, 212.5), and the jury also found Thornton guilty of possessing cocaine base (Health & Saf. Code, § 11350, subd. (a). The trial court found true the allegations that Johnson had two prior serious felony convictions within the meaning of the "three strikes law" and that Thornton had one such prior conviction. (Pen. Code, §§ 667, subds. (a) and (b) - (I), 1170.12.) Johnson was sentenced to state prison for 25 years to life, and Thornton received a prison term of 17 years and 4 months.

      On appeal, Johnson claims the trial court erred by instructing the jury with CALJIC Nos. 2.10 and 17.41.1. Thornton joins those contentions insofar as they might accrue to his benefit (Cal. Rules of Court, rule 13), and raises two additional claims: there was insufficient evidence that Thornton was one of the perpetrators of the robbery; and the court erred by denying Thornton's motion for a new trial.

\* \* \*

FACTS

Late one evening, Easmon Durant cashed a social security check for about $700 at a convenience store on Del Paso Boulevard in Sacramento. On the way home after purchasing some food and groceries, he encountered two men, one Caucasian and the other African-American.

Acting and talking in a way that led Durant to believe the two men were undercover police officers, the Caucasian accused Durant of being a drug user. Grabbing Durant and pushing him up against a wall, the man took everything out of Durant's pockets. After removing the cash from Durant's wallet, the man said that he had to verify if Durant got the money legitimately or from drug dealing. Durant replied he had just cashed his social security check. Telling Durant there were undercover cars around the corner in the alley, the man said he had to go there to make a call and verify Durant's claim. He then escorted Durant to a parking lot, tapped on a red van, and counted the $680 he had taken from Durant's wallet. At this point, the African-American came up and said he had run a warrant check and there were no outstanding warrants on Durant.

---

[2] The following summary is drawn from the November 28, 2001 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-6, filed as Exhibit A to petitioner's April 11, 2003 petition for a writ of habeas corpus.

The African-American told Durant to sit down and not move while the men went to "check out the money situation." The men then walked away separately. Durant waited a "long time" but the men did not return with his money. He had not resisted the men because, based upon their words and actions, he was afraid they would arrest him. The robbery occurred around 11:00 p.m.

At about 11:18 p.m., Officer Patrick MacBeth was on patrol on Del Paso Boulevard when he saw defendant Johnson, a Caucasian, and defendant Thornton, an African-American, running across the road within about 100 yards of the site of the robbery. MacBeth was unaware that the robbery had occurred because Durant did not report it until shortly before midnight. However, because the men were running in a direction away from a Shall station, MacBeth suspected they might have been involved in a theft at the station. Thus, he shined his spotlight on the men and told them to stop.

Defendant Thornton immediately put his hands into his pockets. Fearing for his safety, MacBeth ordered Thornton to "show [MacBeth] his hands." When Thornton did so, he dropped two items onto the ground: Durant's wallet; and an orange container holding .04 grams of cocaine base. After testing the substance in the container, MacBeth arrested Thornton for possessing a controlled substance.

Officer Kevin Griffin, who had arrived to assist MacBeth, searched Johnson and found approximately $700 in his right front pants pocket. Johnson claimed he had obtained the money by cashing a social security check. The money was returned to Johnson, and he was released.

The primary issue at trial was whether Johnson and Thornton were the two men who robbed Durant.

In a photographic line-up, Durant identified Johnson as the Caucasian robber. At trial, Durant was "almost" willing to identify Johnson as the Caucasian robber, but was not positive because Johnson's physical appearance at trial was somewhat different from how the Caucasian robber looked at the time of the robbery.[3] Officers MacBeth and Griffin identified Johnson as the Caucasian man they detained on the night of the robbery; but Griffin said he was not certain of the identification because Johnson's appearance had changed. However, Griffin testified that the man had identified himself as Johnson and had provided Griffin with

---

[3] Johnson had somewhat longer hair and a beard at the time of trial. Although Johnson had a slight mustache at the time of the crime, Durant had told police he thought the Caucasian robber was clean-shaven. Additionally, Durant did not notice that Johnson had what was apparently a noticeable rash on his face. Johnson also was somewhat taller than the description Durant initially gave police.

3

personal information, including a Department of Corrections (CDC) number assigned to Johnson.

Durant testified that Thornton might or might not have been the African-American involved in the robbery. But the description that Durant gave of the perpetrator on the night of the robbery was consistent in some particulars with Thornton's appearance when he was arrested the same night. And Officer MacBeth identified Thornton as the African-American man he arrested approximately 100 yards from the crime scene soon after the robbery.

*Johnson's Defense*

Johnson testified that he was not involved in the robbery and, in fact, was not even the man detained by police that evening. As for the identifying information the Caucasian suspect had given to Officer Griffin, Johnson claimed someone had stolen his wallet, which contained his driver's license and other personal documents, prior to the date of the robbery. Johnson also asserted that he could not have been the suspect whom Officer MacBeth saw running without any noticeable impairment, because Johnson could not run on the date of the robbery due to a medical condition – he walked with a limp and often used a cane. To bolster this claim, Johnson introduced evidence from medical professionals who had previously treated him.

The People introduced evidence to rebut Johnson's claim about his medical condition. The officer who arrested Johnson two days after the robbery testified that he saw Johnson exit a motorhome, walk down four steps, and then walk about 50 feet. Johnson did not limp, was not using a cane, and had no trouble walking. While the officer was present at the medical intake screening at county jail, Johnson noted his medical condition but indicated that he did not have any physical disabilities and did not use a walking aid.

A further blow to Johnson's defense occurred when codefendant Thornton testified in his own defense and identified Johnson as the man who was with Thornton when they were stopped by Officer MacBeth. When asked if he had an explanation why Thornton so testified, Johnson replied: "I do not."

*Thornton's Defense*

Thornton denied any involvement in the robbery. Thornton testified as follows: He met Johnson for the first time that night, when Johnson and a "tall, skinny" African-American man came up to Thornton as he was sitting at a bus shelter in front of the Shell station on Del Paso Boulevard. Johnson offered to pay Thornton to get some drugs, and they left the bus shelter together to do so. They ran across the boulevard because it was a "pretty busy street." Johnson did not have a cane or a limp, and had no problem

4

running.  Thornton disputed Officer MacBeth's testimony that Thornton pulled Durant's wallet from his pocket and dropped it on the ground.  According to Thornton, when the officer pulled up, Johnson tried to hand Thornton the wallet and, in Thornton's words:  "I was like, [w]hat is this?  What are you doing?"  The wallet then dropped to the ground.  Thornton admitted possessing the orange container with cocaine base.

2.  Court Proceedings Regarding Kevin Johnson

After the California Court of Appeal rejected his claims raised on appeal, petitioner's co-defendant, Kevin B. Johnson (Johnson), filed a petition for review in the California Supreme Court.  (August 5, 2004 Answer filed in Case No. CIV S-04-0892 MCE DAD P (Johnson Habeas), Ex. D.)  That petition was summarily denied by order dated February 13, 2002.  (Id., Ex. E.)

On May 13, 2003, Johnson filed a habeas petition in the Sacramento County Superior Court, claiming that he was innocent of the Durant robbery.  (May 24, 2006 Amended Answer filed in Johnson Habeas, at 2.)[4]  In support of his claim of innocence, Johnson filed a letter sent to his parents by Bobby Green, an inmate in an Arkansas prison.  (See court document No. 4 (entitled "Exhibit 22") filed in Johnson habeas).  In the letter, Green stated in cursory fashion that he had committed the Durant robbery with an African-American man named "Larry," and that he would provide more detailed information in this regard and sign an affidavit, if asked.  (Id.)  The state court denied relief on petitioner's claim of innocence and rejected Green's letter, in part on the basis that it was not in the form of an affidavit signed under penalty of perjury.  (August 5, 2004 Answer filed in Johnson Habeas, Ex. F.)  Johnson then filed a petition for a writ of habeas corpus in the California Court of Appeal.  (May 24, 2006 Amended Answer filed in Johnson Habeas, at 3.)[5]  That petition was summarily denied by order dated July 3, 2003.  (August 5, 2004 Answer filed in Johnson Habeas, Ex. G.)

---

[4]  A copy of that petition was not provided to this court.

[5]  A copy of this petition was also not provided to this court.

1           On July 28, 2003, Johnson filed a petition for a writ of habeas corpus in the

2   California Supreme Court claiming, among other things, that he was factually innocent of the

3   robbery of Durant.  (Id., Ex. H.)  That petition was summarily denied by order dated April 21,

4   2004.  (Id., Ex. I.)  After the California Supreme Court denied Johnson's habeas petition, he

5   wrote to Green asking for a declaration detailing the facts of the robbery.  (April 19, 2006, Mem.

6   of P. & A. in Supp. of Am. Pet. for Writ of Habeas Corpus filed in Johnson Habeas, at 12.)  In

7   response, in May 2004, Johnson received an affidavit signed by Green under penalty of perjury,

8   allegedly containing additional information regarding the particulars of the Durant robbery.  (Id.)

9   See August 9, 2008 Am. Pet. filed in the instant case, Ex. D (Green declaration).

10          On May 5, 2004, Johnson filed an original petition for a writ of habeas corpus in

11  this court.  During its review of Johnson's habeas petition, this court became aware of the

12  declaration sent to Johnson by inmate Green.  As a result of questions raised by Green's

13  declaration, this court appointed counsel for both Johnson and petitioner Thornton in connection

14  with their respective habeas petitions.

15          Johnson, through his appointed habeas counsel, filed an amended petition for a

16  writ of habeas corpus in this court on April 19, 2006.  Therein, he raised a freestanding claim of

17  actual innocence, based on the declaration signed under penalty of perjury by inmate Bobby

18  Green, described above.  Johnson also claimed that the Antiterrorism and Effective Death

19  Penalty Act of 1996 violates the constitutional principle of separation of powers.

20  3.  Court Proceedings Regarding Petitioner Thornton

21          After the California Court of Appeal rejected Thornton's claims raised on appeal,

22  petitioner filed a petition for review, which was summarily denied by order dated February 13,

23  2002.  (August 9, 2008 Am. Pet., Ex. C.)[6]  On March 29, 2002, petitioner filed a petition for writ

24

25      [6]  Both petitioner and respondent state that the California Supreme Court refused to
entertain petitioner's petition for review because it was untimely filed.  (See June 17, 2003

26  Answer at 14; April 11, 2003 Petition at pages marked 5, 5a, 5b.)  However, on February 13,
2002, the California Supreme Court summarily denied a petition for review in a case bearing the

1   of habeas corpus in the California Supreme Court.  (Id., Ex. B.)  That petition was summarily

2   denied by order dated November 13, 2002.  (April 11, 2003 Pet., Ex. E.)

3            On April 11, 2003, petitioner filed a petition for a writ of habeas corpus in this

4   court.  Therein, petitioner alleged that: (1) he was denied access to the courts when his appellate

5   attorney abandoned him after his appeal was decided by the California Court of Appeal; (2) the

6   evidence introduced at his trial was insufficient to support his conviction for robbery; (3) his

7   right to due process was violated when the trial court denied his motion for new trial without

8   holding an evidentiary hearing; (4) his right to due process and a jury trial were violated because

9   the jury was not allowed to hear testimony from his co-defendant Johnson that petitioner was not

10   involved in the robbery; and (5) his right to due process was violated by the giving of CALJIC

11   No. 17.41.1.  After habeas counsel was appointed for him, petitioner filed a motion requesting

12   that this action be stayed so that he could exhaust a claim of actual innocence in state court.  That

13   motion was granted by order dated February 6, 2008.

14            Subsequently, petitioner filed a petition for writ of habeas corpus in the California

15   Supreme Court.  (August 9, 2008 Am. Pet., Ex. J.)  Therein, he claimed that newly discovered

16   evidence, in the form of the affidavit signed by inmate Bobby Green, proved that he was factually

17   innocent of the robbery and that his imprisonment violated his Fourteenth Amendment right to

18   due process and his Eighth Amendment right to be free from cruel and unusual punishment.  (Id.)

19   That petition was summarily denied by order dated June 25, 2008.  (Id., Ex. K.)  On August 9,

20   2008, petitioner filed a request to lift the stay of these proceedings.  He also filed an amended

21   petition in which he raised only his freestanding claim of actual innocence.  By order dated

22   /////

23   /////

24

25   same case number as petitioner's direct appeal.  (August 9, 2008 Am. Pet., Ex. C.)  Accordingly,
this court will assume for purposes of this order that a petition for review filed by petitioner was
26   denied on the merits by the California Supreme Court on February 13, 2002.  (Id.)

1  August 13, 2008, petitioner's request to lift the stay was granted and this action proceeded upon

2  the August 9, 2008 amended petition.[7]

3  4.  Further Proceedings

4          By order dated February 10, 2009, this court granted the joint request of petitioner

5  and Johnson for an evidentiary hearing on their claims of actual innocence.  Prior to the date set

6  for the hearing, respondent submitted an exhibit which appeared to provide proof that the

7  affidavit signed by Bobby Green, in which he admitted to the robbery of Durant, was the result of

8  a conspiracy between Johnson and Green to defraud the court.  Shortly thereafter, counsel for

9  petitioner and counsel for Johnson contacted the court and stated their intention to request that

10  the evidentiary hearing be vacated.  Based on a subsequent stipulation of the parties, the

11  evidentiary hearing was vacated.  However, a status conference was held on the date originally

12  scheduled for the evidentiary hearing.  At that status conference, counsel for petitioner and

13  counsel for Johnson both conceded that the claims of actual innocence based on Bobby Green's

14  affidavit were the result of a fraud on the court perpetrated by Johnson and Bobby Green.[8]

15          On May 4, 2009, the habeas petition filed by Johnson was closed pursuant to his

16  request for a voluntary dismissal.  By order dated May 11, 2009, upon request by petitioner and

17  his counsel, this court relieved counsel for petitioner Thornton and granted petitioner thirty days

18  in which to file a motion to amend his habeas petition.  On June 5, 2009, petitioner filed an

19  amended petition.  Therein, he claims that: (1) he was denied access to the courts when his

20  appellate counsel declined to proceed further with his case once his direct appeal was rejected by

21

22          [7]  On September 30, 2008, petitioner, proceeding in pro per, filed a request to file a
23  supplemental habeas petition containing two sentencing claims which had not been raised in
   either of his two prior habeas petitions.  Because petitioner was then represented by counsel, his
24  request to file a supplemental pleading was disregarded.  See order dated October 15, 2008.
   Petitioner now seeks to amend his habeas petition to add these two sentencing claims.

25          [8]  Counsel for respondent also informed the court that the state did not at that time intend
26  to file perjury charges against any party even though it appeared that a fraud had been perpetrated
   on the courts.

8

the California Court of Appeal; (2) insufficient evidence supported his conviction on the robbery count; (3) his right to due process was violated when the trial court denied his motion for new trial without holding an evidentiary hearing; (4) his right to due process and a jury trial were violated because the jury was not allowed to hear testimony from petitioner's co-defendant that petitioner was not involved in the robbery; (5) his right to due process was violated by the giving of CALJIC No. 17.41.1; (6) his sentence is improper because it is based on facts not adjudicated by a jury; and (7) his sentence should be reduced by this court.  Claims (1) through (5) above are identical to the claims contained in the original petition filed by petitioner in this matter, and which he subsequently dropped in order to proceed only with his claim of actual innocence.  The two sentencing claims are new.

On June 18, 2009, respondent filed a response to petitioner's amended petition. Therein, respondent construes petitioner's filing as a request to amend his petition to add the new claims contained in the amended petition and to withdraw his previously filed freestanding claim of actual innocence.  This court will construe petitioner's amended petition in the same manner.

ANALYSIS

1.  Motion to Amend

Respondent argues that petitioner's request to amend his habeas petition should be denied because his delay in presenting his new claims is attributable to his attempt to perpetrate a fraud on the court.  Respondent also argues that the claims petitioner seeks to add are untimely and do not relate back to the originally filed petition.  The court will address both of these contentions below.

A.  Motion to Amend/Discretionary Standards

An application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of civil procedure applicable to civil actions."  28 U.S.C. § 2242.  See also Rule 11, Fed. R. Governing § 2254 Cases (the Federal Rules of Civil Procedure may be applied in habeas corpus proceedings to the extent that the rules of civil procedure are not inconsistent

9

1   with any statutory provision or with the rules governing habeas cases); Fed. R. Civ. P. 81(a)(4)

2   (as amended in 2009) (providing that the Federal Rules of Civil Procedure are applicable to

3   proceedings for habeas corpus to the extent that the practice in such proceedings is not set forth

4   in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section

5   2255 Proceedings, and "has previously conformed to the practice in civil actions").  Under

6   Federal Rule of Civil Procedure 15(a), a habeas petitioner may amend his pleadings once as a

7   matter of course before a responsive pleading is served and may seek leave of court to amend his

8   pleading at any time during the proceeding.  Mayle v. Felix, 545 U.S. 644, 654 (2005).

9           Pursuant to Rule 15, "the court should freely give leave when justice so requires."

10  In Nunes v. Ashcroft, 348 F.3d 815, 818 (9th Cir. 2004), the Ninth Circuit explained:

11              In assessing the propriety of a motion for leave to amend, we
                consider five factors:  (1) bad faith; (2) undue delay; (3) prejudice
12              to the opposing party; (4) futility of amendment; and (5) whether
                the plaintiff has previously amended his complaint.
13

14  See also Foman v. Davis, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared

15  reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated

16  failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

17  party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought

18  should, as the rules require, be 'freely given.'"); Bonin v. Calderon, 59 F.3d 815, 844-45 (9th Cir.

19  1995) (applying the same factors in a habeas case).  Prejudice to the opposing party is the most

20  important factor.  Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990).  "Only where

21  prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or

22  other litigants when they deny leave to amend a pleading."  Howey v. United States, 481 F.2d

23  1187, 1191 (9th Cir. 1973).  See also United States v. Webb, 655 F.2d 977, 980 (9th Cir. 1981).

24  Delay alone, no matter how lengthy, is an insufficient ground for denial of leave to amend.

25  Howey, 481 F.2d at 1191.  A motion to amend a pleading is addressed to the sound discretion of

26  /////

10

1   the court and must be decided upon the facts and circumstances of each particular case. <u>Sackett</u>

2   <u>v. Beaman</u>, 399 F.2d 884, 889 (9th Cir. 1968).

3              As described above, petitioner chose to abandon the claims asserted in his

4   originally filed petition in order to proceed solely with a claim of actual innocence based on the

5   affidavit of Bobby Green.  This court appointed counsel for petitioner and granted his requests to

6   amend his petition and for an evidentiary hearing.  This resulted in an enormous expenditure of

7   time and resources by this court, by appointed counsel and by the respondent.  Now that the fraud

8   has been discovered, petitioner is asking the court to allow him to amend his petition again to

9   drop his claim of actual innocence that appears to have been predicated upon a false affidavit,

10  revive his abandoned claims, and add two new claims.  In light of the foregoing facts, it may

11  appear that petitioner should not be allowed to proceed further with his habeas petition.

12  However, the circumstances surrounding the making of the affidavit signed by Bobby Green

13  were not explained to this court, and there is no direct evidence before the court linking

14  petitioner to the fraud.  In a reply brief filed by petitioner on July 6, 2009, he states that he did

15  not attempt to defraud the court and was "roped into Kevin Johnson's fraud just as deeply as

16  anyone else in this matter . . . ."  (Reply Brief filed July 6, 2009 at 2.)  Because there is no

17  evidence in the record on this point, the court expresses no opinion on whether petitioner was

18  involved in, knew about, or suspected the attempted fraud on the court.  In the absence of

19  evidence to the contrary, this court will assume that petitioner was not involved in the making

20  and submission of Green's fraudulent affidavit.[9]

21             The court turns now to an analysis of the factors set forth in <u>Nunes</u> to determine

22  whether petitioner should be granted leave to amend his habeas petition.  Because the record

23

24             [9]  The court does note that petitioner testified at trial that Johnson was the man who was
25  with him when he was stopped by the police.  (Opinion at 5-6.)  If Bobby Green was actually the
    man who was with petitioner when he was stopped, as Green claims in his affidavit, it would
26  seem that petitioner would have corrected, or at least addressed, this part of the record.  He has
    never done so.

does not contain evidence concerning petitioner's involvement, if any, in the making of the fraudulent affidavit, the court cannot deny petitioner's motion to amend on the grounds of bad faith.  As noted, the pursuit of petitioner's claim of actual innocence has caused significant delay in the resolution of this matter.  However, petitioner's delay in presenting his new claims was apparently based on his decision to proceed with a claim that he believed had more merit.  Petitioner may have been misled in this belief by the fraud perpetrated by Johnson and Green.  Under these unique circumstances, there is no evidence that petitioner's delay in presenting his claims is unjustified.  Respondent has clearly been prejudiced by the actions of petitioner Johnson.  However, as set forth above, there is no evidence that this prejudice resulted from any actions by petitioner.  Further, respondent has already addressed petitioner's claims contained in his original habeas petition filed in this action and would not suffer any prejudice were the court now to consider those claims.  Petitioner has previously been allowed to amend his petition to drop his original claims and proceed solely with a claim of actual innocence.  However, in light of the unique circumstances of this case, the court will not count this factor against petitioner.

Upon analysis of the Nunes factors, this court concludes that petitioner should be permitted to amend his habeas petition unless the claims he seeks to add to his petition are barred by the statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

B.  Whether Petitioner's Claims are Time-Barred or Waived

Because this action was filed after April 26, 1996, the provisions of the AEDPA are applicable.  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  The AEDPA imposes a one-year statute of limitations on the filing of federal habeas petitions.  Title 28 U.S.C. § 2244 provides as follows:

> (d) (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

12

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

A petition is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000).

1. Previously Abandoned Claims

The court will first analyze whether petitioner's claims which were contained in his original petition, and which petitioner now seeks to add to his amended petition, are timely filed.  As explained above, the California Supreme Court denied review of petitioner's judgment of conviction on February 13, 2002.  The ninety-day period during which petitioner could have filed a petition for writ of certiorari in the United States Supreme Court expired on May 14, 2002.  See Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).  Therefore, petitioner's judgment of conviction became final for purposes of § 2244(d)(1)(A) on May 14, 2002.  (Id.)  On March 29, 2002, prior to the date that his judgment of conviction became final, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court.  The statute of limitations was tolled until that petition was denied on November 13, 2002.  28 U.S.C. § 2244(d)(2).  The statute began

/////

13

1  to run the next day, on November 14, 2002.  At that point, petitioner had one year to file his

2  federal habeas petition.

3          Petitioner filed his first habeas petition in this court on April 11, 2003.  Because

4  that petition was filed prior to the expiration of one year from the date petitioner's conviction

5  became final, that petition was timely.  However, on August 9, 2008, petitioner abandoned all

6  five claims contained in his April 11, 2003 petition in order to proceed with an amended petition

7  containing a sole claim of actual innocence.  Respondent argues that the original five claims are

8  now barred by AEDPA's statute of limitations because petitioner abandoned them and allowed

9  the statute of limitations to expire.

10         In the Ninth Circuit, an amended pleading supersedes any prior pleadings.  See

11 King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("All causes of action alleged in an original

12 complaint which are not alleged in an amended complaint are waived"); London v. Coopers &

13 Lybrand, 644 F.2d 811, 814 (9th Cir. 1981) ("It has long been the rule in this circuit that a

14 plaintiff waives all causes of action alleged in the original complaint which are not alleged in the

15 amended complaint"); Wulfsohn v. Russo-Asiatic Bank, 11 F.2d 715, 717 (9th Cir. 1926) ("An

16 amended complaint, which is complete in itself, and which does not refer to or adopt the original

17 complaint as a part of it, entirely supersedes its predecessor, and becomes the sole statement of

18 the cause of action.")  Although courts must construe pro se pleadings liberally, "pro se litigants

19 must follow the same rules of procedure that govern other litigants."  King, 814 F.2d at 567.

20         It is clear that the amended petition filed August 9, 2008 was intended to

21 supersede the original petition and that petitioner wished at that time to proceed solely on his

22 claim of actual innocence.  Under these circumstances, and pursuant to the authorities cited

23 above, petitioner may have waived his five original claims when he chose to abandon them in

24 favor of the actual innocence claim.  In that event, the statute of limitations ran as to those

25 abandoned claims and they are now time-barred.  However, it would appear that these claims

26 properly relate back to the date of the original petition.  Under Fed. R. Civ. P. 15(c), a

14

1   petitioner's amendments made after the statute of limitations has run will relate back to the date

2   of his original pleading if the new claims arose out of the conduct, transaction, or occurrence set

3   forth or attempted to be set forth in the original pleading.  Id.  (citing Fed. R. Civ. P. 15(c)(2)).  In

4   Mayle, the Supreme Court explained that the relation back of new habeas claims "depends on the

5   existence of a common 'core of operative facts' uniting the original and newly asserted claims."

6   545 U.S. at 659.  The rationale for permitting relation back under Federal Rule 15(c) is that the

7   defendants, because of the original complaint, are on notice of the subject matter of the dispute

8   and will not be unduly surprised or prejudiced by the later complaint.  See Anthony v. Cambra,

9   236 F.3d 568, 576 (9th Cir. 2000) (stating that one of the central policies of Rule 15(c) is to

10   "ensur[e] that the non-moving party has sufficient notice of the facts and claims giving rise to the

11   proposed amendment").

12          The first five claims contained in petitioner's June 5, 2009 amended petition are

13   identical to the claims raised in his initial petition.  Respondent responded to those claims in the

14   answer filed June 17, 2003 and therefore will not be prejudiced if petitioner is allowed to proceed

15   with those claims at this time.  Under these unusual circumstances, the undersigned concludes

16   that the first five claims contained in petitioner's June 5, 2009 amended petition relate back to

17   the date of the original petition and are therefore timely.  Accordingly, petitioner's motion to

18   amend his habeas petition to reassert those claims will be granted.

19          2.  New Claims

20          Petitioner also seeks to amend his petition to add two claims related to the

21   sentence imposed in state court.  First, he claims that the imposition of the upper term on the

22   robbery count violated his rights as stated in Apprendi v. New Jersey, 530 U.S. 466 (2000)

23   (Apprendi claim).  (Amended Petition (hereinafter Pet.) filed June 5, 2009 at consecutive pgs.

24   23-24.)  Second, petitioner claims that his sentence was "incorrectly imposed," and requests that

25   the court either remove a five-year enhancement or otherwise reduce his sentence.  (Id. at 24.)

26   These two sentencing claims are time-barred because they were filed more than one year after the

statute of limitations for the filing of a federal habeas petition began to run on November 14, 2002.  The claims do not relate back to the date of the original petition under Rule 15(c) because they do not arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading and do not share a common core of operative facts with any of petitioner's earlier asserted claims.  Mayle, 545 U.S. at 656-57.  Nor did petitioner raise his Apprendi claim within one year of the United States Supreme Court's decision in Apprendi, as required by AEDPA.  28 U.S.C. § 2244(d)(1)(C).  Accordingly, petitioner's motion to amend his habeas petition to add the two claims related to his sentence will be denied.[10]

### 3. Claim of Actual Innocence

Petitioner's request to voluntarily dismiss his claim of actual innocence based on the affidavit of Bobby Green will be granted.

## II. Habeas Petition

Below, the court will address the merits of petitioner's claims that: (1) he was denied access to the courts when his appellate attorney abandoned him after his appeal was decided by the California Court of Appeal; (2) the evidence at his trial was insufficient to support his conviction for robbery; (3) his right to due process was violated when the trial court denied his motion for new trial without holding an evidentiary hearing; (4) his right to due process and a jury trial were violated because the jury was not allowed to hear testimony from petitioner's co-defendant that petitioner was not involved in the robbery; and (5) his right to due process was violated by the giving of CALJIC No. 17.41.1.

---

[10]  On March 9, 2007, the same date this court appointed counsel for petitioner, petitioner filed a pro se motion requesting a stay of these proceedings so that he could exhaust his Apprendi claim in state court.  Subsequently, on October 22, 2007, petitioner's counsel filed a motion for stay in order to exhaust a claim of actual innocence.  By order dated December 17, 2007, this court denied petitioner's pro se motion for stay on the grounds that it had been superceded by the later motion filed by petitioner's counsel on his behalf.  Assuming arguendo that the relevant date for purposes of the statute of limitations is March 9, 2007, petitioner's Apprendi claim is still untimely because it was filed more than one year after the statute of limitations for the filing of a federal habeas petition began to run.

A. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

<u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims.  <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008).  <u>See also</u> <u>Frantz v. Hazey</u>, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

17

1   error, we must decide the habeas petition by considering de novo the constitutional issues

2   raised.").

3          The court looks to the last reasoned state court decision as the basis for the state

4   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

5   state court decision adopts or substantially incorporates the reasoning from a previous state court

6   decision, this court may consider both decisions to ascertain the reasoning of the last decision.

7   Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court

8   reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

9   habeas court independently reviews the record to determine whether habeas corpus relief is

10  available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle

11  v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not

12  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

13  AEDPA's deferential standard does not apply and a federal habeas court must review the claim

14  de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

15          B.  Petitioner's Claims

16               1.  Denial of Access to the Courts

17          Petitioner's first claim is that he was denied access to the courts when his trial

18  counsel declined to proceed further with his appeal after the California Court of Appeal denied

19  relief.  He explains that he filed numerous petitions with the state courts in an attempt to obtain

20  further appellate review, but that his petitions were unfairly and improperly denied on procedural

21  grounds or in the mistaken belief that petitioner was still represented by counsel.  (June 5, 2009

22  Second Amended Petition (hereinafter Pet.) at consecutive pgs. 6-10.)[11]

23  /////

24

25          [11] The second amended petition contains several duplicate pages.  In these findings and
    recommendations, the court has identified all pages which set forth petitioner's claims, even if
26  duplicative.

1          Assuming arguendo that the California courts failed to appropriately address

2   petitioner's post-conviction filings, petitioner's claim of a denial of access to the courts fails to

3   state a cognizable claim for federal habeas relief.  Petitioner's claim in this regard is based upon

4   alleged violations of state law and is not cognizable in this federal habeas proceeding.  Ortiz v.

5   Stewart, 149 F.3d 923, 939 (9th Cir. 1998) ("federal habeas relief is not available to redress

6   alleged procedural errors in state post-conviction proceedings"); Gerlaugh v. Stewart, 129 F.3d

7   1027, 1045 (9th Cir. 1997) (same); Franzen v. Brinkman, 877 F.2d 26 (9th Cir. 1989) (alleged

8   errors in a state post-conviction review proceeding are not addressable through federal habeas

9   corpus).  Accordingly, petitioner is not entitled to relief on this claim.

10          2.  Sufficiency of the Evidence

11          Petitioner claims that the evidence introduced at his trial was insufficient to

12   support his conviction on the robbery charge.  (Pet. at consecutive pgs. 10-13.)  He concedes that

13   "arguendo, the prosecution's evidence, at most, suggests that Petitioner might have had some

14   participation after the robbery, for example, by receiving stolen property."  (Id. at 11.)

15          The California Court of Appeal rejected petitioner's insufficiency of the evidence

16   argument on appeal, reasoning as follows:

17          Thornton claims there was insufficient evidence that he was one of
           the men who forcibly took Durant's property.  In Thornton's view,
18          "[t]he prosecution's evidence, at most, suggests [he] might have
           had some participation after the robbery, for example, by receiving
19          stolen property."  His argument emphasizes Durant's inability to
           positively identify him at trial and inconsistencies in the physical
20          description of the robber that Durant provided to police.

21          In reviewing defendant's contention, we "must review the whole
           record in the light most favorable to the judgment . . . to determine
22          whether it discloses substantial evidence – that is, evidence which
           is reasonable, credible, and of solid value – such that a reasonable
23          trier of fact could find the defendant guilty beyond a reasonable
           doubt."  (People v. Johnson (1980) 26 Cal.3d 557, 578.)  We
24          "presume in support of the judgment the existence of every fact the
           trier could reasonably deduce from the evidence."  (People v.
25          Lewis (1990) 50 Cal.3d 262, 277.)

26   /////

19

> Thornton and Johnson were apprehended within minutes of the robbery while running near the location where the suspects had left the victim. Thornton had the victim's wallet, and Johnson possessed a sum of money consistent with the amount taken from the victim. While Durant was unable to positively identify Thornton, his description of the African-American man involved in the robbery was similar in some, if not all, particulars to Thornton. All of this evidence supports the jury's finding that Thornton was the African American man who participated in the robbery.

(Opinion at 17-18.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 & n.13.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the

inference that favors conviction. <u>McMillan v. Gomez</u>, 19 F.3d 465, 469 (9th Cir. 1994).  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.  <u>United States v. Mares</u>, 940 F.2d 455, 458 (9th Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors reached."  <u>Roehler v. Borg</u>, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law.  <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Chein</u>, 373 F.3d at 983.

Viewing the evidence in the light most favorable to the verdict, and for the reasons described by the California Court of Appeal, the undersigned concludes that there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that petitioner was guilty of the robbery charge.  The state court opinion rejecting petitioner's argument in this regard is a reasonable construction of the evidence in this case and is not contrary to or an objectively unreasonable application of federal law.  <u>See</u> <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002); <u>see also</u> 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas relief on his claim that the evidence introduced at his trial was insufficient to support his conviction on the charge of robbery.

### 3. <u>Motion for New Trial</u>

Petitioner also claims that the trial court erred in failing to conduct an adequate hearing on his motion for new trial and by "ruling that codefendant's post-verdict declaration exculpating petitioner was not likely to have resulted in a different verdict."  (Pet. at consecutive pgs. 13-17.)  The California Court of Appeal rejected this argument on appeal, reasoning as follows:

> Lastly, Thornton argues the trial court abused its discretion in denying Thornton's motion for a new trial on the ground of newly discovered evidence based on a post-trial declaration by Johnson claiming Thornton was not involved in the robbery.

/////

Johnson's declaration states: "I, KEVIN BRUCE JOHNSON, declare: I am one of the two defendants in this case. I know, by reason of personal participation, of the facts of the theft offense for which both of us defendants have been convicted. Wade Thornton had no part in the offense against the victim, Easmon Durant. I am willing to testify on his behalf in any retrial of the case against him. [¶] This declaration is made against the advice of my attorney, and these facts were not disclosed to him until June 20, 2000, after trial. I cannot let Wade Thornton be punished unjustly for what he did not do, and I apologize for the inconvenience and anxiety I have caused to him and to all concerned. The above is true on pain of perjury of State law; signed and dated at Sacramento, CA on June 21, 2000."

In denying the new trial motion, the trial court concluded: "As to the issue of newly discovered evidence, the Court finds that the declaration filed by co-defendant Johnson is so patently suspect as being the product of illusion and appears to be completely incredible. [¶] Additionally, the testimony of both defendant Thornton and defendant Johnson which has now be[en] preserved was not believable, coupled with the fact that defendant Thornton was seen shortly after the crime in the very v[i]cinity of the crime throwing down the victim's wallet. [¶] The Court does not find that the admission of the alleged newly discovered evidence would likely result in a different verdict on new trial."

"""The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.""" (People v. Delgado (1993) 5 Cal.4th 312, 328.) The trial court has "inherent authority to determine, within reasonable bounds, the information needed to rule on the motion." (People v. Millwee (1998) 18 Cal.4th 96, 145, fn. 23.) There are several criteria that must be considered before the trial court grants a motion for new trial based on newly discovered evidence. (See People v. Delgado, supra, 5 Cal.4th at p. 328.) Most relevant to this case, the trial court can reject such a motion if the alleged newly discovered evidence does not make a different result probable on retrial. (Ibid.) And in making this determination, the trial court may consider both the materiality and credibility of the evidence. ( Id. at p. 329.)

Although he now claims the trial court should have held an evidentiary hearing to consider Johnson's testimony, Thornton never asked the court to do so before ruling on the motion. In any event, the court had the authority to determine, as it reasonably did in the circumstances here, that it was unnecessary to call Johnson as a witness before ruling on the motion. (Cf. People v. Millwee, supra, 18 Cal.4th at p. 145, fn. 23.)

/////

22

As the People point out, the court had presided over a full trial, during which it had had the opportunity to evaluate the credibility of both defendants. Because Johnson's testimony was so unbelievable, the court was entitled to find that Johnson's declaration was "completely incredible," without first having Johnson testify again at the hearing of the motion.

The decision that Thornton claims "should apply and control the outcome" here is readily distinguishable. People v. Hairgrove (1971) 18 Cal.App.3d 606 reversed a trial court's decision to deny a motion for a new trial, finding it to be procedurally flawed. Larry Spasbo had come forward after Hairgrove was convicted of burglary and, in an affidavit, Spasbo admitted that he had committed the crime. (Id. at pp. 608-610.) Spasbo appeared at the hearing on the motion, but the trial court dissuaded him from testifying. (Id. at p. 609.) The Court of Appeal reversed, emphasizing that "a court should make every effort to hear a witness who appears in court to confess to a crime for which someone else stands convicted." (Id. at p. 611.) In this case, however, the trial court did nothing to discourage Johnson from testifying nor has Thornton shown that he objected to the trial court ruling on the motion without hearing Johnson's testimony. Moreover, the trial court already had heard Johnson testify at trial.

Under the circumstances, the trial court properly denied the motion on the ground that Johnson's declaration was not credible, without having Johnson transported to the hearing to testify in person. (Cf. People v. Millwee, supra, 18 Cal.4th at p. 145, fn. 23.)

(Opinion at 18-21.)

In ruling on a motion for new trial based on newly discovered evidence, a trial court in California must consider the following factors:

1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.

People v. Delgado, 5 Cal. 4th 312, 328 (1993) (citations omitted.) Further, "the trial court may consider the credibility as well as materiality of the evidence in its determination [of] whether introduction of the evidence in a new trial would render a different result reasonably probable."

/////

23

1   Id. at 329 (citation omitted.)[12]  "[T]he trial court is in the best position to determine the

2   genuineness and effectiveness of the showing in support of the motion."  People v. Minnick, 214

3   Cal. App. 3d 1478, 1481 (1989) (citation omitted.)

> That is especially so where the new evidence and its effect on a
> prior finding involved the credibility of a key witness.  [Citation.]
> While a reviewing court defers to the superior court judge's
> assessment regardless of whether the new evidence is presented
> live or by affidavit [citation], added deference seems in order
> where the judge has heard the witness testify live.  The judge's
> perspective in that case cannot be replicated on appeal.

8   People v. Bishop, 14 Cal. App. 4th 203, 213 (1993).

9         Under these state law standards, the trial court did not abuse its discretion in

10  denying petitioner's motion for a new trial.  As noted by the California Court of Appeal, the trial

11  court had the opportunity to hear Johnson's trial testimony as well as all of the other evidence

12  implicating petitioner in the robbery of Durant.  Based on his familiarity with the trial, the judge

13  could reasonably conclude that the admission into evidence of Johnson's post-trial declaration at

14  a retrial would not result in a different verdict.

15        Moreover, even if the trial court did abuse its discretion in failing to grant

16  petitioner's motion for new trial, a violation of state law may not form the basis for federal

17  habeas corpus relief.  Estelle, 502 U.S. at 68.  The conclusion of the California Court of Appeal

18  that the trial court did not violate petitioner's constitutional rights in denying his motion for new

19  trial is not contrary to or an unreasonable application of clearly established federal law, nor is it

20  based on an unreasonable determination of the facts in light of the evidence presented in the state

21  court proceeding.  Accordingly, petitioner is not entitled to relief on this claim.

---

23        [12]  Similarly, to prevail on a motion for new trial based upon newly discovered evidence
24  in federal court, the defendant must show "(1) the evidence is newly discovered; (2) failure to
    discover the evidence sooner was not due to lack of diligence; (3) the evidence was material to
    trial issues; (4) the evidence was not cumulative or merely impeaching; and (5) a new trial, if
25  granted, would probably result in acquittal."  United States v. George, 420 F.3d 991, 1000 (9th
    Cir. 2005); United States v. Kulczyk, 931 F.2d 542, 548 (9th Cir. 1991).  See also Fed. R. Crim.
26  P. 33.

1          4.  Testimony of Co-Defendant Johnson

2          Petitioner's next claim is that he was denied the right to a jury trial when the trial

3   court failed to order a new trial at which Johnson's testimony or his affidavit could be admitted

4   into evidence.  (Pet. at consecutive pgs. 18-20.)  Petitioner argues that "proof of his innocence is

5   a fundamentally important part of this case to prevent a miscarriage of justice."  (Id. at 18.)  In

6   this regard, petitioner "denies that he had any knowledge at all of the 'robbery.'"  (Id.)

7          Petitioner's claim regarding the trial court's denial of his motion for new trial has

8   been discussed above.  To the extent that petitioner is raising a freestanding claim of actual

9   innocence, a claim he has now withdrawn, he is also not entitled to relief.

10          In Herrera v. Collins, 506 U.S. 390 (1993), a majority of the Supreme Court

11   assumed, without deciding, that a freestanding claim of actual innocence is cognizable under

12   federal law.  In this regard, the court observed that "in a capital case a truly persuasive

13   demonstration of 'actual innocence' made after trial would render the execution of a defendant

14   unconstitutional, and warrant federal habeas relief if there were no state avenue open to process

15   such a claim."  Id. at 417.  A different majority of the Supreme Court explicitly held that a

16   freestanding claim of actual innocence is cognizable in a federal habeas proceeding.  Compare

17   506 U.S. at 417 with 506 U.S. at 419 and 430-37.  See also Jackson v. Calderon, 211 F.3d 1148,

18   1165 (9th Cir. 2000) (noting that a majority of the Justices in Herrera would have supported a

19   free-standing claim of actual innocence).  Although the Supreme Court did not specify the

20   standard applicable to this type of "innocence" claim, it noted that the threshold would be

21   "extraordinarily high" and that the showing would have to be "truly persuasive."  Herrera, 506

22   U.S. at 417.  More recently, the United States Supreme Court declined to resolve whether federal

23   courts may entertain independent claims of actual innocence but concluded that the petitioner's

24   showing of innocence in the case before it fell short of the threshold suggested by the Court in

25   Herrera.  House v. Bell, 547 U.S. 518, 554-55 (2006).  Finally, in District Attorney's Office for

26   Third Judicial Dist. v. Osborne, ___U.S.___, 129 S. Ct. 2308 (2009), the Supreme Court has

1  recently again assumed, without deciding, that a federal constitutional right to be released upon

2  proof of "actual innocence" exists.  In doing so, the court noted that it is an "open question"

3  whether a freestanding claim of actual innocence exists and that the court has "struggled with it

4  over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult

5  questions such a right would pose and the high standard any claimant would have to meet." Id. at

6  2321.

7          The Ninth Circuit has likewise assumed that freestanding innocence claims are

8  cognizable in both capital and non-capital cases and has also articulated a minimum standard of

9  proof in order to prevail on such a claim.  Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997)

10 (en banc).  "A habeas petitioner asserting a freestanding innocence claim must go beyond

11 demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent."

12 Id. at 476-77.  See also Jackson, 211 F.3d at 1165.  The petitioner's burden in such a case is

13 "extraordinarily high" and requires a showing that is "truly persuasive."  Carriger, 132 F.3d at

14 476 (quoting Herrera, 506 U.S. at 417).

15         Assuming arguendo that a freestanding claim of innocence may be maintained in

16 this non-capital case, petitioner has failed to make the required showing in this case.  For the

17 reasons set forth by the California Court of Appeal, Johnson's post-trial affidavit does not

18 constitute a "truly persuasive demonstration" that petitioner is innocent of the robbery charge.

19 Herrera, 506 U.S. at 417.  Accordingly, petitioner is not entitled to relief on this claim of actual

20 innocence.

21              5. Jury Instruction Error

22         Petitioner next claims that his right to due process was violated by the giving of

23 CALJIC No. 17.41.1.  He argues that the instruction failed to "allow for 'proof beyond a

24 reasonable doubt.'"  (Pet. at consecutive p. 22.)  The California Court of Appeal rejected this

25 argument on appeal, reasoning as follows:

26 /////

Johnson, joined by Thornton, also contends the trial court erred by instructing the jurors with CALJIC No. 17.41.1 as follows: "The integrity of a trial requires that jurors at all times during their deliberations conduct themselves as required by these instructions. [¶] Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation."

They claim the instruction impinged upon their rights to a unanimous verdict by independent jurors, and denied them fair trials and due process of law by allowing majority jurors to exert improper pressure upon dissenting jurors, and by intruding upon the jury's deliberative process, thereby chilling deliberations.

We are not persuaded. As we will explain, CALJIC No. 17.41.1 is a proper instruction that serves the important function of protecting the due process right of litigants to a fair trial and promoting the rule of law, which is the cornerstone of our legal system. Moreover, defendants were not prejudiced by the instruction.

A. It is not error to give CALJIC No. 17.41.1

Among the elements of the right to trial by jury guaranteed by article I, section 16 of the California Constitution is the requirement that, after the case is finally submitted to them, the jurors must engage in deliberation before reaching a verdict. (People v. Collins (1976) 17 Cal.3d 687, 693.) This does not mean the jurors are precluded from taking a vote before discussing the case. (Vomaska v. City of San Diego (1997) 55 Cal.App.4th 905, 910-912.) Such a vote is a form of jury deliberation in that it constitutes the expression of jurors' opinions about the case, "albeit without accompanying reasons or explanations." (Id. at p. 912.)

This is so because to deliberate means "to ponder or think about with measured careful consideration and often [but not necessarily] with formal discussion before reaching a decision or conclusion." (Webster's 3d New Internat. Dict. (1986) p. 596.) Thus, if the jurors are able to decide the case on the first vote, they effectively have determined that further deliberation is unnecessary. (Vomaska v. City of San Diego, supra, 55 Cal.App.4th at pp. 910-911; Pen.Code, § 1128 ["After hearing the charge, the jury may either decide in court or may retire for deliberation. If they do not agree without retiring for deliberation, an officer must be sworn to keep them together for deliberation. . . ."]; Code Civ. Proc., § 613 ["When the case is finally submitted to the jury, they may decide in court or retire for deliberation. . . ."].)

But if the jurors are unable to decide the case without discussing the issues, it is the duty of each juror to deliberate further.

27

(Pen.Code, § 1128; <u>People v. Collins</u>, <u>supra</u>, 17 Cal.3d at p. 693; <u>Vomaska v. City of San Diego</u>, <u>supra</u>, 55 Cal.App.4th at pp. 911-912; see also Code Civ. Proc., § 612 ["Upon retiring for deliberation the jury may ...."], § 612.5 [similar language], § 614 [same]; Pen.Code, § 1093, subd. (f) [same], § 1137 [same], § 1138 [same].)  "Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member.  Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint." (<u>People v. Collins</u>, <u>supra</u>, 17 Cal.3d at p. 693.)

Because jury deliberation is an element of the right to trial by jury, a juror's refusal to deliberate is misconduct amounting to the inability and failure to perform the juror's duty, for which he or she can be discharged.  (See Pen.Code, § 1089; Code Civ. Proc., § 233; <u>People v. Thomas</u> (1994) 26 Cal.App.4th 1328, 1333.)  So, too, is a juror's expression of intent to disregard the law.  (<u>People v. Collins</u>, <u>supra</u>, 17 Cal.3d at p. 696.)  Likewise, the expression of an intent to decide the case based upon the penalty that could be imposed by the court is misconduct which constitutes a failure to perform the juror's duty and justifies his or her removal for cause. (<u>People v. Shannon</u> (1956) 147 Cal.App.2d 300, 306; <u>cf. People v. Daniels</u> (1991) 52 Cal.3d 815, 864 ["a juror's serious and wilful misconduct is good cause to believe that the juror will not be able to perform his or her duty"].)

Such is the case with other forms of juror misconduct.  (<u>E.g.</u>, <u>People v. Daniels</u>, <u>supra</u>, 52 Cal.3d at pp. 863-864 [juror discussed case outside of court and expressed opinion on issue of guilt before deliberations]; <u>People v. Holloway</u> (1990) 50 Cal.3d 1098, 1108, 1110-1112 [juror read newspaper accounts which "revealed information about defendant's prior criminal conduct that the court had ruled inadmissible because of its potential for prejudice"], <u>disapproved on other ground</u> in <u>People v. Stansbury</u> (1995) 9 Cal.4th 824, 830, fn. 1.)

The evil of juror misconduct is that it deprives a party of the cornerstone of our jury system, a decision made by neutral factfinders based solely upon the applicable law and the evidence admitted at trial.  (<u>United States v. Gorham</u> (D.C. Cir.1975) 523 F.2d 1088, 1098 ["Of course a jury can render a verdict at odds with the evidence and the law in a given case, but it undermines the very basis of our legal system when it does so"].)

Not only is juror misconduct unfair to a party in the case, it has great potential to undermine public confidence in our entire system of justice.  "The right to equal justice under law inures to the public as well as to individual parties to specific litigation, and that right is debased when juries at their caprice ignore the dictates of

established precedent and procedure."  (<u>United States v. Gorham</u>, <u>supra</u>, 523 F.2d at p. 1098.)

In an effort to prevent these evils, jurors properly are admonished among other things that: (1) they have a responsibility to deliberate as impartial judges of the facts (CALJIC Nos. 17.40, 17.41); (2) they must accept and follow the law as stated to them by the court, regardless of whether the jurors agree with the law (CALJIC Nos. 0.50, 1.00); (3) they must decide the case solely upon the evidence presented to them (CALJIC Nos. 0.50, 1.03) and, thus, may not independently investigate the facts or the law, or consider or discuss facts as to which there was no evidence (CALJIC Nos. 0.50, 1.03); (4) they must not discuss or consider the subject of penalty or punishment (CALJIC No. 17.42); (5) they must not be influenced by pity for, or prejudice against, the defendant or by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling (CALJIC Nos. 0.50, 1.00); (6) they are not partisans or advocates in the case but, instead, must be impartial judges of the facts (CALJIC No. 17.41); (7) both the defendant and the People have the right to expect that the jurors will conscientiously consider and weigh the evidence, apply the law, and reach a just result regardless of the consequences (CALJIC Nos. 0.50, 1.00); (8) the jurors must promptly report to the court any incident within their knowledge involving an attempt by any person to improperly influence any member of the jury (CALJIC No. 0.50); and (9) they may address questions or requests to the court (CALJIC No. 17.43).

CALJIC No. 17.41.1 essentially is a summary of those instructions, restated in a way that makes it clear each juror has an obligation to inform the court if any other juror refuses to deliberate, expresses an intention to disregard the law, or expresses an intention to decide the case based on penalty or any other improper basis.

CALJIC No. 17.41.1 does not address either the investigative process after the trial court is advised of the possibility of juror misconduct, or what must be shown in order for the trial court to discharge a juror for misconduct.[13]  As we have just noted, the instruction simply reiterates some of the jurors' duties and informs jurors that they should advise the court if they believe a fellow juror is engaging in misconduct-no more, no less.  Such an instruction, in and of itself, does not intrude upon the secrecy of the deliberative process.

Nevertheless, it is claimed that the instruction has a chilling effect on deliberations by making it less likely that a juror will hold fast to a decision disfavored by other jurors for fear that he or she will

---

[13]  Thus, for example, in evaluating defendant's challenge to CALJIC No. 17.41.1, we need not decide what must be shown to establish that a juror actually has refused to deliberate.

1   be reported to the judge.  This Chicken Little argument ignores the
2   tenacity of holdout jurors demonstrated daily in California's trial
    courts when jurors disagree about the state of the evidence and
3   adhere to the court's admonition that a juror should not "change an
    opinion" and "decide any question in a particular way [simply]
4   because a majority of the jurors, or any of them, favor that
    decision."  (CALJIC No. 17.40.)

5   Simply stated, we are unconvinced that CALJIC No. 17.41.1
6   operates in any way to coerce a juror to abandon his or her view of
    the evidence for fear of retaliation by a court which explicitly has
7   instructed the jurors that (1) if the court had done or said anything
    seeming to indicate what the jury should find to be the facts, "you
8   [the jurors] will disregard it and form your own conclusion"
    (CALJIC No. 17.30), (2) both the defendant and the People "are
9   entitled to the individual opinion of each juror" (CALJIC No.
    17.40), and (3) each juror must not decide any question in a certain
10  way simply because a majority of the jurors favor that decision
    (CALJIC No. 17.40).

11  B. Giving CALJIC No. 17.41.1 did not prejudice defendant

12  In any event, even assuming for the sake of argument that giving
    CALJIC No. 17.41.1 is federal constitutional error, it is not
13  reversible per se, as defendants contend.  Rather, it would be
    subject to harmless error analysis.  (Chapman v. California (1967)
14  386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711] (Chapman); People v.
    Molina (2000) 82 Cal.App.4th 1329, 1332-1335.)

15
    Under United States Supreme Court precedent, as summarized in
16  People v. Flood (1998) 18 Cal.4th 470, we distinguish between
    "trial errors" not subject to automatic reversal and "structural
17  errors" which require reversal without regard to the strength of the
    evidence or other circumstances.  (Id. at p. 493, citing, inter alia,
18  Arizona v. Fulminante (1991) 499 U.S. 279 [113 L.Ed.2d 302].)
    Generally, if a defendant had counsel and was tried by an impartial
19  adjudicator, there is a strong presumption that any error which may
    have occurred is subject to harmless error analysis.  (People v.
20  Flood, supra, 18 Cal.4th at p. 492, citing Rose v. Clark (1986) 478
    U.S. 570, 579 [92 L.Ed.2d 460].)
21
    Structural errors are those that affect the framework within which
22  the trial proceeds, as opposed to the trial process itself, e.g., total
    deprivation of the right to counsel at trial, a biased judge, unlawful
23  exclusion of members of the defendant's race from a grand jury,
    denial of the right to self-representation at trial, and denial of the
24  right to a public trial, such that the trial cannot reliably serve its
    function as a vehicle for determination of guilt or innocence, and
25  no criminal punishment may be regarded as fundamentally fair.
    (People v. Flood, supra, 18 Cal.4th at p. 493.)
26

30

"[I]nstructional errors-whether misdescriptions, omissions, or presumptions-as a general matter fall within the broad category of trial errors subject to <u>Chapman</u> review on direct appeal," i.e., whether it appears beyond a reasonable doubt that the error did not contribute to the verdict.  (<u>People v. Flood</u>, <u>supra</u>, 18 Cal.4th at pp. 499, 504.)

Accordingly, even if giving CALJIC No. 17.41.1 were error, it is not structural and does not require reversal per se.  (<u>People v. Molina</u>, <u>supra</u>, 62 Cal.App.4th at p. 1335.)  The instruction merely requires jurors to inform the court of juror misconduct.  It does not "'affect[ ] the framework within which the trial proceeds,'" nor does it "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."  (<u>Neder v. United States</u> (1999) 527 U.S. 1 [144 L.Ed.2d 35, 46-47], italics omitted; <u>People v. Flood</u>, <u>supra</u>, 18 Cal.4th at p. 493.)

Defendants make no effort to demonstrate how CALJIC No. 17.41.1 prejudiced them, and we see no reason to believe that it played any part in the jury's deliberations.  The jury deliberated for a total of between six and seven hours.  None of the jurors complained of any misconduct, and there was no indication of any deadlock or holdout jurors.  The jurors communicated with the court only for the purpose of obtaining a readback of the testimony of two police officers and a copy of the parties' stipulations.  On this record, "[w]e will not infer that [CALJIC No. 17.41.1] had any impact prejudicing defendant[s]."  (<u>People v. Molina</u>, <u>supra</u>, 82 Cal.App.4th at p. 1336.)

(Opinion at 9-17.)

Petitioner's collateral challenge to CALJIC No. 17.41.1 is foreclosed by the decision of the Ninth Circuit Court of Appeals in <u>Brewer v. Hall</u>, 378 F.3d 952, 955-57 (9th Cir. 2004).  In <u>Brewer</u>, the Ninth Circuit held that, regardless of the "constitutional merits" of CALJIC No. 17.41.1, habeas corpus relief was unavailable on a challenge to that jury instruction because there is "no Supreme Court precedent clearly establishing" that use of this jury instruction violates a defendant's constitutional rights.  <u>Id.</u> at 955-56.  Here, as in <u>Brewer</u>, petitioner "has pointed to no Supreme Court precedent clearly establishing that CALJIC 17.41.1 – either on its face or as applied to the facts of his case--violated his constitutional rights."  <u>Id.</u> at 957.  Thus, the state court's rejection of petitioner's jury instruction claim was not contrary to or an unreasonable application of clearly established federal law.  28 U.S.C. § 2254(d).

1    Even if the state trial court erred in instructing the jury with CALJIC No. 17.41.1,

2 the error was harmless under the circumstances of this case.  See Brecht v. Abrahamson, 507

3 U.S. 619, 623 (1993) (holding that a federal court may not grant habeas relief for trial errors

4 without a showing of actual prejudice, defined as a "substantial and injurious effect or influence

5 in determining the jury's verdict").  As noted by the California Court of Appeal, the jury in

6 petitioner's case quickly reached a verdict without apparent difficulty.  There is no evidence that

7 the giving of CALJIC No. 17.41.1 in this case chilled the jurors' exercise of free speech,

8 prevented free and full deliberations, or allowed for petitioner's conviction on proof less than

9 beyond a reasonable doubt.  Accordingly, petitioner is not entitled to relief on this claim.

10               CONCLUSION

11    Accordingly, IT IS HEREBY ORDERED that petitioner's request to amend his

12 habeas petition is denied in part and granted in part, as explained above.

13    IT IS HEREBY RECOMMENDED that petitioner's June 5, 2009 second

14 amended petition for a writ of habeas corpus be denied.

15    These findings and recommendations are submitted to the United States District

16 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

17 days after being served with these findings and recommendations, any party may file written

18 objections with the court and serve a copy on all parties.  Such a document should be captioned

19 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

20 shall be served and filed within ten days after service of the objections.  The parties are advised

21 that failure to file objections within the specified time may waive the right to appeal the District

22 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23 DATED: July 27, 2009.

24

25

DAD:8

26 thornton755.hc2

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE